M. A. MAHANNA, R. A. Suess and Dean Winkjer, as Receivers of Diamond Transport Company, a corporation, Plaintiffs, Respondents and Cross-Appellants,

v.

WESTLAND OIL COMPANY, a corporation, American State Bank of Williston, a corporation, Fred Grawe and B. L. Lawrence, Defendants, Appellants and Cross-Respondents.

No. 7849.

Supreme Court of North Dakota.

Dec. 14, 1960.

Rehearing Denied Feb. 6, 1961.

John R. Davidson, Williston, Strutz, Jansonius & Fleck, Bismarck, for defendants, appellants and cross-respondents.

Lord, Ulmer, Bair & Daner, Mandan, Joseph P. Stevens, Minot, for plaintiffs, respondents and cross-appellants.

BURKE, Judge.

The complaint of the plaintiffs in this action, insofar as it relates to issues remaining in the case, may be summarized in narrative form substantially as follows:

The Diamond Transport Company, a corporation, is the owner and entitled to the possession of five motor trucks and attached equipment of the total value of $42,126. On the 27th day of April, 1957, the defendants, American State Bank, Westland Oil Company and Fred Grawe, wrongfully seized said trucks and equipment and sold and delivered possession thereof to the defendant B. L. Lawrence, who still retains possession thereof against the will of the plaintiffs. The value of the use of said trucks to the Diamond Transport Company is $740 a day. In their use by the defendant B. L. Lawrence, the trucks have been damaged in the total sum of $11,750. The trucks were seized maliciously, with the intent to injure Diamond Transport Company, in furtherance of a conspiracy, on the part of all of the defendants, acting in concert, to force Diamond Transport Company out of business in competition with B. L. Lawrence, so as to create a monopoly in the oil trucking business in and around Williston in B. L. Lawrence. The seizure of said trucks forced the Diamond Transport Company into receivership and thereby damaged it in the sum of $30,000. Plaintiff demanded damages for the value of the trucks and equipment in the sum of $42,126, damages for the loss of use of the trucks in the sum of $740 a day from the time of seizure until the day upon which judgment should be entered, damages for injury to the trucks while in the possession of B. L. Lawrence in the sum of $11,750 and damages by reason of being forced into receivership in the sum of $30,000.

In his separate answer the defendant, B. L. Lawrence, alleged that he purchased the trucks from Westland Oil Company without any knowledge of Diamond Transport Company's claim and as a counterclaim he alleged that Diamond Transport Company was indebted to him in the sum of $1,087.-10. The American State Bank, in its separate answer, alleged that it purchased from Westland Oil Company conditional sales contracts covering the described trucks upon the condition that Westland Oil Company guaranty payment thereof. It alleged that these contracts were in default from and after March 23, 1957, and that at the time of the seizure of the trucks by Westland the amount of the default was $2,275.47. It alleged that it had been advised that the check Diamond Transport Company had given for its motor vehicle licenses had been returned because of insufficient funds and that such licenses had been, or were about to be cancelled. It alleged that Diamond Transport's insurance had been cancelled for nonpayment of premiums. It alleged that it advised Westland Oil Company of these facts in order that it might take steps to protect itself upon its guaranty of the conditional sales contracts. In the answer of Westland Oil Company and Fred Grawe, it was alleged that Westland Oil Company had sold the trucks to Diamond Transport Company by conditional sales contracts; that the conditional sales contracts had been pledged to American State Bank and the payments thereon guaranteed by Westland Oil Company; that defaults had occurred in the payments on the contracts; that the trucks had been repossessed in accordance with the provisions of the contracts and sold to B. L. Lawrence. As counterclaims Westland Oil Company al-

leged an open account indebtedness against Diamond Transport Company in the sum of $8,490.67 and the balance due upon the conditional sales contracts in the sum of $24,503.96. A jury trial of the action resulted in a verdict in favor of the plaintiffs. Pursuant to the verdict a joint and several judgment was entered against all of the defendants for the value of the trucks seized in the sum of $15,767 and for the loss of use of the trucks in the sum of $9,450 or a total joint and several judgment of $25,217. In addition individual judgments for exemplary damages were awarded against Westland Oil Company in the sum of $7,391.50 against American State Bank in the sum of $7,391.50, against B. L. Lawrence in the sum of $5,000 and against Fred Grawe in the sum of $1,217. The open account counterclaim of B. L. Lawrence had been dismissed by the trial judge prior to the submission of the case to the jury and the counterclaims of Westland Oil Company were dismissed by the jury. Subsequent to the entry of judgment the defendants moved for judgment notwithstanding the verdict or for a new trial. Upon this motion the trial judge ordered that the judgment for exemplary damages against Westland Oil Company should be vacated and that Westland Oil Company's open account counterclaim in the sum of $8,490.97 should be allowed, but in all other respects denied the motion. An amended judgment was entered in accordance with the court's order and both plaintiffs and defendants have appealed.

Before entering into a discussion of the issues raised by these appeals we believe we should point out that the briefs filed by both appellants and cross-appellants do not conform to the requirements of Rule 8(B) 5, of this court. This rule provides that the briefs shall set forth:

"A concise statement of the facts pointing out specifically the page and line in the settled case, in verification of each statement so made." 76 N.D. XIX.

Upon this appeal, although there are 493 pages in the transcript of the proceedings in the case, and both sides challenge the sufficiency of the evidence to sustain the parts of the judgment they consider unfavorable, the briefs filed by the parties are not annotated to the record either with respect to the statements of fact therein set forth, or with respect to any of the proceedings specified as error in the trial of the case. This court has thus been confronted with the alternatives of dismissing the appeals for failure to conform to the rules or of undertaking to do the attorneys' work for them. Out of consideration for the rights of the parties who are not at fault, we have chosen the latter course.

We turn our attention first to the defendants' specifications that the evidence is insufficient to sustain a finding by the jury against the defendants, American State Bank and B. L. Lawrence for any damages or to support a finding of exemplary damages against any of the defendants.

The trucks which are the subject matter of this suit were sold by Westland Oil Company to Diamond Transport Company by conditional sales contracts. These contracts were delivered to the American State Bank. They bear Westland Oil Company's guaranty and endorsement to bearer. There is no question but that, at the time of seizure, the sales contracts were in default and that valid grounds for repossessing the trucks existed. The particular default which precipitated the decision to repossess was the failure of Diamond Transport Company to keep the insurance on the trucks in force. Mr. Davidson, president of American State Bank, learned of this default from the insurance agent who had cancelled the policies of insurance. He passed this information on to the defendant, Grawe, who was the local manager of Westland Oil Company at Williston. Mr. Grawe then repossessed the trucks. They were delivered to him by Diamond Transport Company's drivers without protest. This was on Saturday

April 27, 1957. On the following Monday morning, Mr. Anderson, the general manager and controlling stockholder of Diamond Transport Company, called at the American State Bank. He testified that when he entered Mr. Davidson's office at the bank, Mr. Grawe, Mr. Lawrence and Mr. Davidson were there, seated around Mr. Davidson's desk. According to Anderson, Mr. Davidson said: "I am all done messing around with you. * * * Mr. Grawe and I are gamblers this morning. We are gambling we can take Diamond Transport's five trucks with all the equipment on them, everything, and sell them to Mr. Lawrence here this morning and we may not get by with it but we are of the opinion that we can." Mr. Anderson stated that Mr. Davidson told him that he could have an hour and a half to raise the entire balance due on the trucks or about $24,500. Mr. Anderson stated that he left the bank and wandered around until about noon when he returned to the bank. When he returned Mr. Grawe, Mr. Lawrence and Mr. William Davidson were still there and they had been joined by Mr. Jack Davidson. Mr. Anderson testified that Mr. William Davidson stated at that time, "I will give you until tomorrow at a quarter to twelve to raise $24,000.00, and if you are not in here with it, then we are selling the trucks to Mr. Lawrence." Mr. Anderson was unable to raise the money overnight and returned to the bank on Tuesday morning. Again, according to him, Mr. Grawe, Mr. Lawrence, Mr. William Davidson and Mr. Jack Davidson were present. He informed them that he had not yet raised the money. He said that Mr. Davidson then offered him a thousand dollars if he would sign a release of the trucks. He refused to sign the release and left the bank. Later the same morning, Mr. Anderson made an arrangement to sell the trucks to a Mr. Gauvey. Mr. Gauvey testified, "I told Mr. Anderson that if I buy the trucks and get a clear title to them, if he got refinanced, that he could have the trucks for the same penny I paid for them." At about 1:30 P.M. the same

day Mr. Anderson returned to the bank with Mr. Gauvey. They were then informed that they were too late as the trucks had been sold to Mr. Lawrence.

Much of the testimony of Mr. Anderson with respect to the conversations had at the bank and the persons present at such conversations is controverted, but upon the basis of this testimony the jury could have found that each of the defendants had full knowledge of all of the details of the transaction. The credibility of witnesses and the weight to be given to their testimony are questions for the jury, not the appellate court. Smith v. Riedinger, N.D., 95 N.W.2d 65; Klundt v. Pfeifle, 77 N.D. 132, 41 N.W.2d 416.

Section 28-29071 NDRC 1957 Supp. provides that a seller who repossesses personal property, which has been sold by a conditional sales contract, shall serve a notice of such repossession upon the purchaser, within four days after the seizure of the property, and retain the property for 15 days during which time the purchaser has the right to redeem. There is no question but that the trucks were sold in violation of this statute and the jury's finding that each of the defendants was aware of the facts which constituted a violation is conclusive on this court. A joint and several judgment against all of the defendants for the value of the trucks was therefore proper.

With respect to exemplary damages Section 32-0307 NDRC 1943 provides:

"In any action for the breach of an obligation not arising from contract, when the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant."

While plaintiffs alleged a conspiracy, on the part of the defendants, to put Diamond Transport out of business, the

proof of such a conspiracy was not essential to the allowance of exemplary damages. If the proof was sufficient to permit the jury to infer malice on the part of the defendants that was sufficient. In this case the jury could have found that the defendants, Grawe and Lawrence and the American State Bank through its president, Davidson, knowingly, wilfully and recklessly sold or purchased the repossessed trucks in violation of Diamond Transport's statutory right to redeem. This was sufficient to warrant a finding of malice and an award of exemplary damages. McCurdy v. Hughes, 63 N.D. 435, 248 N.W. 512, 87 A.L.R. 683.

The defendant Grawe, individually, urges that exemplary damages could not be awarded against him because he acted upon the advice of counsel. The record does not sustain his claim. He was advised that he had a right to repossess the trucks, but the acts of the defendants which constituted the conversion were all done subsequent to the repossession and without advice of counsel.

■ Defendants also say that the trial judge erred in permitting the jury to find verdicts for exemplary damages in different amounts against the several defendants. It is their contention that where defendants act in concert in committing a wrong, exemplary damages must be awarded, if at all, in the same amount against each defendant and that such damages must be measured according to the guilt of the least culpable party to the wrong. This is not the rule in this state. Here exemplary damages may be found in different amounts against joint tort-feasors. McCurdy v. Hughes, 63 N.D. 435, 248 N.W. 512, 87 A.L.R. 683. The evidence was therefore sufficient to sustain the awards for exemplary damages.

We shall next consider the defendant's specifications relating to the award of $9,450 for the loss of use of the repossessed trucks. The errors specified concern the competency of the evidence as to the value of the use

and the proper measure of damages for loss of use. Mr. Anderson the manager of Diamond Transport Company was the witness who testified to the value of the loss of use. He stated that Diamond Transport had had an accountant prepare a cost accounting for each individual truck operated by it in the years 1954 and 1955; that he was familiar with the cost accounting; that included therein were cost accountings for trucks similar to the trucks involved in this case. Basing his testimony upon his observation of the cost accounting and his experience in the trucking business he stated his opinion of the earning power in dollars per month of each of the trucks during the period immediately preceding its repossession. This testimony was objected to upon the ground that the foundation was in part hearsay, that the witness's recollection was not the best evidence, that the cost accounting was too remote and that the value testified to was not the proper measure of damages.

■■ Where damages are allowable for the loss of use of personal property the measure of damages is the value of the loss of use to the person wrongfully deprived of the property. It is not the earning capacity of the property in the abstract or the value of its use to anyone else, Tooz v. Tooz, 76 N.D. 732, 39 N.W.2d 257; Gunsch v. Gunsch, N.D., 73 N.W.2d 345. It follows that the deprived person must have been in a position to use the property, 77 C.J.S. Replevin § 277b, p. 203; Hammond v. Thompson, 54 Mont. 609, 173 P. 229. Such deprived person must also have a lawful right to use the property. Robertson v. Snider, Mo.App., 86 S.W.2d 996; Desmet v. Sublett, 54 N.M. 355, 225 P.2d 141.

■ The record shows that Diamond Transport Company had operated at a loss during the year 1956, and it is evident from the record that its business had not improved in the early part of 1957. By the time the trucks, with which we are here concerned, were seized, it was not only in default in its payments on the trucks but its insurance

on the trucks had been cancelled for non-payment of the premiums. Payment on the check that it had given to pay for the truck licenses had been refused because of insufficient funds and the Motor Vehicle Licensing Department had ordered the licenses picked up. The Internal Revenue Department had filed liens for nonpayment of social security and other taxes. Payment on other checks, one in the sum of $6,000 had been refused. Mr. Anderson had pleaded guilty to issuing a check without sufficient funds. The company's telephone had been disconnected for nonpayment of the telephone bill. It had many outstanding open accounts which it was unable to pay. It had no operating capital with which to pay its help or other costs of operation. Its credit was exhausted to the extent that it could not carry on its own business and was compelled to farm out to another trucker the contract upon which the trucks were working at the time of seizure.

All of these facts were admitted by Mr. Anderson but he said he was trying to work out a plan for refinancing with his creditors at the time the trucks were seized but that, when the trucks were sold to B. L. Lawrence, he just gave up and quit. It is his contention that if he had been allowed to redeem the trucks these plans to refinance would have been successful and Diamond Transport Company would have remained in business. However, the only redemption he could have made for Diamond Transport amounted to a sale of the trucks to Mr. Gauvey with a right of repurchase when and if a refinancing and reorganization could be accomplished.

There is no question but that, at the time of the sale of the trucks to Mr. Lawrence, Diamond Transport Company was out of business. It could not legally operate without insurance or motor vehicle licenses. Even if the sale of the trucks to Mr. Gauvey had gone through their repurchase by Diamond Transport depended upon a successful refinancing of the company. The only evidence in regard to refinancing is

that Mr. Anderson talked about such a possibility to some of his creditors. Whether a plan could have been formulated which would have satisfied the creditors and provided the necessary working capital to continue operations is a matter which is exceedingly speculative in character. The existence of such a speculative possibility is not sufficient to warrant an award of damages for the use of the trucks based on what their earnings would be in a successful business. The award for damages for loss of use must therefore be disallowed. We express no opinion upon the question of whether the testimony as to the amount of earnings, received in evidence, would have been proper in the event Diamond Transport Company had been a going concern, nor do we imply that where an action in replevin is altered to one for conversion during the course of a trial that plaintiff may recover both the value of the property at the time of its conversion and the value of the use thereof up to the time of the trial.

The defendants also specified error upon the dismissal of two of their counterclaims. The first of these is the counterclaim of B. L. Lawrence in the sum of $1,087.10. The second is the counterclaim of Westland Oil Company for the balance due from Diamond Transport on the purchase price of the trucks.

Lawrence's counterclaim was dismissed by the trial judge upon the ground that the evidence showed conclusively that the claim was one against Basin Rig and Trucking Company and not against Diamond Transport Company. The defendants urged however that, although Basin Rig and Diamond Transport were separate corporate entities, their close association, their control by the same individual, and their method of conducting business was such that, insofar as the public is concerned they must be treated as one.

Diamond Transport Company was organized in 1954. From the time of its incorporation its affairs have been directed, man-

aged and in all things completely controlled by Marvin Anderson, the majority stockholder. The exact percentage of the stock held by Mr. Anderson and other stockholders is not disclosed by the record. In May 1956, Mr. Anderson organized Basin Rig and Trucking Company. Anderson as the principal stockholder of this corporation managed all of its affairs. After Basin Rig was organized all of the business of both corporations was conducted from a single office. Besides Mr. Anderson there were three employees in the office. The corporations had a truck yard at Tioga and another at Keene where they kept the equipment owned by both corporations. Basin Rig equipment would often be used on Diamond Transport jobs and Diamond Transport equipment on Basin Rig jobs. All of the oil field work, whether it was considered a Diamond Transport job or a Basin Rig job in the office was done in the name of Basin Rig. The two corporations had a single checking account which was carried in the name of Basin Rig. All billings were made in the name of Basin Rig for work performed by either corporation and all suppliers of materials and services to either corporation were instructed to bill Basin Rig for such materials and services. Basin Rig issued its checks in payment of the obligations of each corporation. Commenting on the situation Mr. Anderson stated, "Well, it was very hard to distinguish even to the two companies, for them not to have confliction in the billing. The revenues from Diamond went to the Basin account and then it was later separated." It appears that the affairs of the two corporations were so intermingled and confused that even he, the manager, had difficulty in making proper charges and credits to the two corporations. The position in which these corporations' method of doing business put persons dealing with them is explained by the following question and answer which appear in the record.

"Q. Was there any way from the operation of Basin and Diamond Mr. Anderson, that Mr. Lawrence would be able to know what Diamond owed him and what Basin owed him? A. I do not believe so."

It is apparent from the record that the public dealt with Mr. Anderson as the manager of an oil field trucking business. Customers would ask for service and Mr. Anderson would assign whatever equipment was available to the job. Sometimes it would be Basin equipment. Sometimes it would be Diamond equipment. Sometimes it would be some of the equipment of each. Basin would submit the bill for the charges and the customer's payment would be deposited in Basin's bank account. Basin would pay the costs of the operation and at some later time Mr. Anderson would determine what Diamond's share should be. At what point in the operation Mr. Anderson decided which jobs should be assigned to Basin and which to Diamond is not shown by the record. The customer never actually knew with which he was dealing but would assume that it had been Basin because in all cases Basin presented the bill for the services.

B. L. Lawrence's claim here arose out of a job which he completed at Mr. Anderson's request. On the job, when he took it over, were three Diamond Trucks and one Basin Truck operated by employees of the respective corporations. Following the custom and the instructions of Mr. Anderson, Mr. Lawrence sent his bill to Basin.

Mr. Anderson testified that the job had been Basin's and that Basin, not Diamond, was indebted to Mr. Lawrence. He also testified that no charge had been made to Basin for the use of Diamond's Trucks on this job.

[9] We deem it apparent upon the record that the affairs, assets and equipment of the two corporations were so intermingled and confused that insofar as the public was concerned the two corporations conducted a single business.

Most of the cases in which the facts have been found sufficient to disregard corporate

entities deal with parent and subsidiary corporations. They deal with situations where one corporation owns a controlling interest in the stock of another and through its officers so manages the subsidiary that it becomes a mere instrumentality or adjunct of the parent. Fletcher, Cyclopedia of Corporations, Chapt. 2 Sec. 43. While in this case we do not have the parent and subsidiary relationship, we do have two corporations, under the control of a single individual, managed in such a manner that they became instrumentalities, adjuncts and agents of each other and in their relations with their customers identical or indistinguishable in fact. The reasons for disregarding the corporate entities in such a case are the same as exist in the cases where a subsidiary becomes indistinguishable from the parent corporation. We think therefore that, in this case, the separate corporate entities should be disregarded and that the debts incurred by the business conducted in their names should be considered joint and several obligations of the two corporations. Pfaffenberger v. Pavilion Restaurant Co., 352 Mich. 1, 88 N.W.2d 488. It was error therefore to dismiss the defendant, Lawrence's counterclaim.

The next specification to be considered relates to the counterclaim of Westland Oil Company in the sum of $24,503.96, which sum was the balance due upon the purchase contracts for the trucks at the time of their repossession. Section 35-0120 NDRC 1943 provides in part:

"In an action for the conversion of personal property, the defendant may show in mitigation of damages the amount due on any lien to which the plaintiff's rights were subject and which was held or paid by the defendant or any person under whom he claims."

Upon this claim the trial judge instructed the jury:

"It is a question of fact for the jury to determine under all of the evidence and these instructions whether the conditional sale contracts involved in this action were assigned to the defendant, American State Bank, and if so, whether such contracts were reassigned to the Defendant, Westland Oil Company. If you should find, by a fair preponderance of the evidence, that Defendant Westland Oil Company, parted with its ownership and interest in the conditional sale contracts, executed and delivered by Diamond Transport Company to Defendant, Westland Oil Company, and that they neither retained nor regained any interest therein, then and in such event Diamond Transport Company would not be further obligated to the Defendant, Westland Oil Company, upon such contracts and such defendant would not be entitled to set off or recoup such amount by way of reduction of Plaintiffs' claims."

■ There is no question but that this instruction would have been proper had Westland Oil Company been the sole defendant in the case. But Westland and the American State Bank were sued as joint tort-feasors and it therefore was immaterial which one of the defendants owned the conditional sales contracts. Whether they were owned by Westland or by the American State Bank, (and it is admitted that they were owned by one or the other) they would be available in mitigation of the joint liability of the two defendants for damages. This is a matter in which the plaintiff had no concern because once the indebtedness had been allowed in mitigation of the joint liability, the claim of each of the defendants with respect to such liability would be extinguished.

However, upon the confused record which we have before us, we are unable to determine what the jury did with respect to this claim. It is true that the final verdict of the jury states that the counterclaim of the Westland Oil Company was not allowed, but this was the third verdict returned by

the jury. In refusing the first and second verdicts the trial judge gave some additional instructions. The first and second verdicts were not preserved for the record so we do not know why they were not received except for the trial judge's statement that parts thereof were inconsistent with other parts. The transcript records a garbled account of one of the subsequent instructions of the trial judge. As shown in the record it is as follows:

"The verdict in which you find in favor of the Plaintiffs, allows for any offset with respect to Plaintiffs' claims, that is, if you find offset in favor of Defendant Westland Oil Company they will be needed if there will be no use for the counterclaim."

Since the learned judge who tried this case is precise and meticulous in his choice of language, we are aware that the above excerpt from the record is not an accurate report of what he said. As reported the statement is literally without meaning. There is enough in the record, however, to suggest that the trial judge may have told the jury that they might allow Westland's claim by deducting the amount allowed from the total of plaintiffs' damages and by bringing in a verdict for the plaintiff in the reduced amount and that if the claim was allowed in this manner then there would be no need to award defendants a separate judgment on the counterclaim.

As we view the record there are strong indications that this is exactly what the jury did. The plaintiffs claimed that the value of the trucks repossessed was $42,126. The defendant, Lawrence, who bought the trucks, a few days after they were repossessed, stated that he paid the full amount due on the sales contract for them, or $24,500 and that he thought he made a good deal. Despite this evidence the jury allowed only $15,767 as the value of the trucks. This sum is approximately $27,000, less than plaintiffs claimed the trucks were worth and about $10,000 less than defendants admitted they were worth. This cir-

cumstance certainly suggests that the jury may have allowed Westland's claim as an offset. We cannot, however, determine what was done with a sufficient degree of certainty to warrant a finding to that effect.

Defendants' motion for judgment notwithstanding the verdict was granted as to two items. The jury had found exemplary damages against Westland Oil Company and, according to the trial judge's construction of the verdict, had disallowed Westland's counterclaim upon its open account with Diamond Transport Company. The trial judge set aside the verdict as to these two items and plaintiffs have appealed from the trial judge's order and from the judgment entered pursuant to such order.

■■■ During the negotiations out of which this action arose Westland Oil Company was represented by its local manager at Williston. There is no evidence in the record that any officer of the corporation participated in such negotiations. While there is a substantial conflict of authority as to a corporation's liability for exemplary damages for the acts of its agents (19 C.J. S. Corporations § 1286), it is the settled rule in this jurisdiction that a corporation is not so liable unless it authorized or ratified the wrongful act of its agent. Voves v. Great Northern R. Co., 26 N.D. 110, 143 N.W. 760, 48 L.R.A.,N.S., 30; Rickbeil v. Grafton Deaconess Hospital, 74 N.D. 525, 23 N.W.2d 247, 166 A.L.R. 99. In this case good and legally valid reasons existed for the seizure and sale of the trucks previously purchased by Diamond Transport Company. In the absence of any proof we must assume that the agent was authorized to repossess and sell in accordance with law. Westland undoubtedly ratified the seizure and sale of the trucks, but there is no evidence that it or any of its officers were aware of the illegal nature of the sale, and there is therefore no proof that they ratified the illegal act of their agent.

■■■ Undoubtedly the trial judge was correct in holding that Westland Oil Com-

pany was entitled to recover on its open account counterclaim against Diamond Transport Company. Rules of Civil Procedure 13(b). However, as we have said in regard to the counterclaim for the balance due on the sales contract, we have serious doubts as to whether the jury did not in fact allow the counterclaims by deducting the amount it found due thereon from the total amount it found as the value of the trucks and bringing in a verdict for the difference.

██. In view of the state of the record, the confusion which apparently existed in the minds of the jury, and our uncertainty with respect to what the jury actually did, we are agreed that in the interests of justice we must grant a new trial of all of the issues in this case. A new trial is therefore granted with leave to the parties to amend the pleadings upon such a trial.

SATHRE, C. J., MORRIS and TEIGEN, JJ., and JOHN SAD, District Judge, concur.

STRUTZ, J., being disqualified, did not participate. Honorable JOHN SAD, one of the Judges of the First Judicial District, sitting in his stead.

### On Petition for Rehearing

BURKE, Judge.

Respondents have filed a motion to amend the record in this case and have petitioned for a rehearing based upon the record as it would be if amended.

██ The motion to amend is not an appropriate one to be made in this court. It is only where unusual circumstances are shown that this court will settle a statement of the case for appeal. The motion should have been to remand the record to enable the district court to consider the merits of the motion to amend. The circumstances of this case, however, would not justify the granting of a motion to remand for such a purpose. Passing upon a similar request in Ricks v. Bergsvendsen, 8 N.D. 578, 580, 80 N.W. 768, 770, this court said:

"These requests, coming, as they do, after the case has been submitted and decided, and after an opinion has been written and filed, are not seasonably made. Without holding that this court is devoid of authority to grant such a request, under any possible state of facts, we do, without hesitation, hold that similar requests will ordinarily be denied, and will not be granted in any case, unless it presents features which are peculiar and very exceptional, and such as this case does not present." See also Garbush v. Firey, 33 N.D. 154, 156 N.W. 537.

In the instant case, a new trial has been granted and no reason has been advanced to explain the inaccuracy of the statement of the case except the inadvertence and oversight of counsel. Features of such an exceptional character that a remand would be justified are not present.

Furthermore, our principal ground for granting a new trial was that the verdicts of the jury were ambiguous. If the record were corrected, as requested by respondents, this ambiguity would be even more clearly apparent than it is upon the record as it now stands. The motion to amend and the petition for rehearing are each denied.

SATHRE, C. J., MORRIS and TEIGEN, JJ., and JOHN SAD, District Judge, concur.

STRUTZ, J., did not participate. JOHN SAD, District Judge, First Judicial District, sitting in his stead.