HOWARD J. RODGERS *vs.* GEORGE B. DODGE & another.

Suffolk.   October 16, 1922. — December 18, 1922.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Corporation,* Foreign, Issue of stock. *Equity Jurisdiction,* To set aside issue of stock by corporation.

A suit in equity brought by a minority stockholder in a Maine corporation in behalf of himself and others who might join, against the corporation and one to whom, by a vote of the board of directors, eighty shares of the corporation's preferred stock had been issued, to have the vote and transfer declared void for fraud and the stock returned to the corporation, was referred to a master, who, after a detailed finding of subsidiary facts including a recital of the nature and value of the consideration for which the directors voted to issue the stock, without a report of the evidence found that, in passing the vote "each of the directors acted with sufficient knowledge of the facts to enable him to exercise an intelligent judgment in passing upon the matters recited and referred to . . . that they were not misled or deceived in any way regarding the nature or effects of their action; and that in adopting said vote, each of them exercised an intelligent and honest and *bona fide* judgment as to the amount of the corporation's indebtedness to . . . [the individual defendant], and as to the fact and the value to the corporation of the services rendered by . . . [him] to the corporation and as to the value to the corporation of" certain agreements on his part which comprised part of the consideration which he gave, "which indebtedness, services and agreements were the consideration for the issue of the eighty shares of preferred stock;" that there was no fraud in the issuing of the shares; that the judgment of the directors was honestly and *bona fide* exercised, and that the shares were issued for adequate consideration as con-

clusively determined by the directors and without any agreement that the individual defendant should hold them as collateral security. Rev. Sts. of Maine (1903) c. 47, §§ 50, 87, were found by the master to be applicable. The bill was dismissed. The defendants appealed. *Held,* that

(1) The master's conclusions were not inconsistent with his subsidiary findings:

(2) The master's findings were conclusive;

(3) Under the law of Maine as found by the master, the vote of the directors and the issuance of the shares to the individual defendant were valid;

(4) The decree was affirmed.

BILL IN EQUITY, filed in the Superior Court on May 20, 1920, and afterwards amended by the filing of a substituted bill, by a minority stockholder of American Toilet Goods Company, a Maine corporation, who brought the suit on behalf of himself and all other stockholders in the corporation who might "come in and become co-plaintiffs and pay their proportion of the expense of the prosecution thereof," against George B. Dodge and the corporation, seeking to have declared void a vote of the directors of the corporation authorizing and directing the issuance to the defendant Dodge of eighty shares of the preferred stock of the corporation, and that stock issued in accordance therewith be returned to the corporation.

In the Superior Court, the suit was referred to a master. Material findings set forth in an original and a supplemental report of the master are described in the opinion. Exceptions of the plaintiff to the report were heard by *Sisk,* J., by whose order there were entered an interlocutory decree overruling the exceptions and confirming the report and a final decree dismissing the bill. The plaintiff and the corporation appealed.

*F. Burke,* (*J. P. Bell* with him,) for the plaintiff.

*H. R. Bailey,* (*C. H. Gilmore* with him,) for the defendant Dodge.

BRALEY, J. The plaintiff, a minority stockholder of the American Toilet Goods Company, the defendant corporation, which although organized under the laws of the State of Maine has a usual place of business at Boston in this Commonwealth, alleges in behalf of himself and all other stockholders who may join, that on January 1, 1916, eighty shares of the unsubscribed and unissued cumulative preferred stock of the corporation was by vote of the board of directors unlawfully and fraudulently issued to the defendant Dodge. The relief asked is, that the vote be declared illegal and void, and the stock returned to the company

for cancellation, and that Dodge be ordered to account for all dividends which he has received. The case was referred to a master to whose report the plaintiff filed numerous exceptions which were overruled, and the report confirmed, from which decree, as well as from the final decree dismissing the bill, the plaintiff and the corporation appealed to this court.

It is substantially stated in the bill, of which our courts have jurisdiction, *Hancock National Bank* v. *Ellis*, 172 Mass. 39, and expressly found by the master, that under the Rev. Sts. of Maine (1903) c. 47, §§ 50, 87, in force when the vote was passed, "Any corporation may purchase mines, manufactories and other property necessary for its business, and the stock of any company or companies owning, mining, manufacturing or producing materials or other property necessary for its business, and issue stock to the amount of the value thereof in payment therefor, and may likewise issue stock for services rendered to such corporation and the stock so issued shall be full paid stock and not liable to any further call or payment thereon; and in the absence of actual fraud in the transaction, the judgment of the directors as to the value of the property purchased, or services rendered, shall be conclusive, . . . and no payment upon any subscription to or agreement for the capital stock of any corporation, shall be deemed a payment within the purview of this chapter, unless bona fide made in cash, or in some other matter or thing at a bona fide and fair valuation thereof." The passing of the vote, the issuance of the stock, and its delivery are conceded in the answer. The stock had a total par value of "eight thousand dollars" for which payment is to be made in money or money's worth as provided in the statute. The corporation was organized on March 23, 1914, for the purpose of acquiring and conducting the business of manufacturing and selling perfumery and toilet articles, which had been established by Willis H. Lowe under the trade name of the American Toilet Goods Company. And in May, 1914, Lowe conveyed the "business" to the corporation in consideration of the issue to him of all the common stock "amounting . . . to seventy-five thousand dollars," and of an agreement to assume all outstanding debts and liabilities incurred while the business stood in his name. The mercantile operations conducted by him between June, 1913, and May, 1914, had

been "principally financed" by the defendant Dodge, hereafter referred to as the defendant, under an agreement in writing dated July 22, 1913, whereby the defendant agreed to lend such sums of money as Lowe might from time to time require, the entire amount "not to exceed eight thousand dollars." Interest at the rate of five per cent a month was to be paid, and all invoices of merchandise sold were to be assigned to the defendant as security until he had been fully reimbursed. The amount advanced before the transfer amounted to about "four thousand dollars," and the vote of the directors on May 11, 1914, under which Lowe's business was taken over and his indebtedness assumed, includes "a loan of $8,000 by George B. Dodge and interest thereon all as evidenced by certain written agreements, to secure the payment of which this corporation shall assign such or all of its book accounts and bills receivable as said Dodge shall from time to time request." A suit in equity, begun January 30, 1914, by the Willis H. Lowe Company against Lowe was then pending in which damages and injunctive relief were sought on the ground of unfair trade competition. But "a supplemental bill" joined the American Toilet Goods Company as a co-defendant, charging it with unlawful acts as alleged in the original bill. It became evident from the master's draft report that, although not yet assessed, large damages would be awarded, and the defendants in that suit thereby "would be forced into bankruptcy." It also appears that after the corporation was organized, Dodge indorsed its notes, the proceeds of which amounting to more than "six thousand dollars," were used in carrying on the business. It further owed him "nearly all of the interest which had accrued under the agreement of Mr. Lowe, assumed by the corporation, to pay five per cent a month for his loans, very little of this interest having been paid." The defendant under these circumstances demanded collateral security, and Lowe, who owned four hundred and twenty-six shares of the Willis H. Lowe Company, transferred that stock to the defendant as security for his liability on the notes of the corporation indorsed or to be indorsed, and for any overdue indebtedness when the stock was delivered.

The contention of the plaintiff that there was but one agreement which related thereto, dated July 22, 1913, in which the

rate of interest was twelve per cent yearly, cannot be supported on the facts shown by the report. The financial condition had become more acute, and the burden increasingly onerous on January 1, 1915, when the master determined that the Willis H. Lowe Company was entitled to damages against Lowe in the sum of "six thousand dollars," and against the American Toilet Goods Company for "eighteen thousand dollars." The corporate indebtedness to the defendant is found to have been at this time "about eight thousand dollars," and it was doubtful whether the collateral would be sufficient to satisfy it.

The master having stated at much length the several transactions between Lowe, the corporation, and the defendant through whose active efforts and services a settlement was effected which without any payment of the amounts awarded relieved the American Toilet Goods Company from all liability, makes the following findings: "By this compromise . . . Mr. Dodge surrendered for the benefit of the American Toilet Goods Company all collateral security received from Lowe and which he actually held for the protection of his own liability on . . . that corporation's notes or for the corporation's indebtedness to him; while Mr. Lowe consented to and authorized the surrender of all equitable rights which he had as a pledgor of the same collateral to Dodge." "Dodge's liability as indorser and the . . . interest due him and unpaid on February 25, 1915, as well as when he received the . . . shares as collateral, exceeded the fair sale value of the shares." The report also, after reviewing the nature and extent of the defendant's services, recites, that the defendant, "had rendered services which were of large material value," and that his negotiation of the settlement was of great importance to the corporation, and his claim to compensation was never disputed. The defendant's demands for a settlement were the subject of several meetings and prolonged discussion between him, his counsel, and the directors of the company.

The directors, at a meeting legally held, voted, "That whereas this Company is indebted to George B. Dodge to an amount greatly in excess of the eight thousand dollars . . . and interest thereon as evidenced by certain promissory notes held by said Dodge or indorsed and discounted by him, which indebtedness in excess of said notes has been incurred (1) through certain out-

standing agreements of said Company to pay said Dodge interest and bonuses on loans in excess of that called for on the face of said notes, (2) the personal services of said Dodge, and certain other valuable considerations surrendered by him in effecting a settlement of certain serious litigation against this Company and otherwise financing it; . . . the president and treasurer are hereby authorized and directed to issue and deliver to said George B. Dodge eighty . . . full paid shares of the preferred stock of this Company in full discharge and settlement of all indebtedness of this Company to said Dodge with the exception of certain outstanding promissory notes of this Company, payable to him, and amounting in all to eight thousand dollars . . . together with the interest due thereon." Lowe, who on December 15, 1915, owned seven hundred and twenty-two shares of the authorized seven hundred and fifty shares of common stock, had transferred to the defendant three hundred and fifty-nine shares, and if the eighty shares of preferred stock which also could be voted were issued to the defendant, he would have a clear majority at any meeting of the stockholders. A voting trust theretofore had been formed between Lowe and the defendant, to continue for five years unless sooner terminated by agreement, by which all of Lowe's stock, with the exception of one share to qualify him as an officer of the company, was pooled. In addition, the defendant agreed to give to Lowe an option to purchase all of the defendant's common stock, "or all his interest in stock in the voting trust, upon payment . . . at the book value . . . provided the American Toilet Goods Company should previously have paid all of its then existing indebtedness" due to him. The directors knew of this arrangement and agreement. But the master finds, that "each of the directors acted with sufficient knowledge of the facts to enable him to exercise an intelligent judgment in passing upon the matters recited and referred to in the vote which they adopted . . . ; that they were not misled or deceived in any way regarding the nature or effects of their action; and that . . . each of them exercised an intelligent and honest and *bona fide* judgment as to the amount of the corporation's indebtedness to Mr. Dodge, and as to the fact and the value to the corporation of the services rendered by Dodge to the corporation, and as to the value to the

corporation of Dodge's agreements to continue loans, enter into
the voting trust and give to Lowe the proposed option, . . .   The
consideration for which the directors voted to issue the eighty shares
. . . " was "  . . . his liability as indorser for the corporation,
in satisfaction of his alleged claim for services rendered to the
corporation, and in satisfaction of his claim to be reimbursed
for the value of his collateral which he had surrendered for the
purpose of settling and adjusting the claims and suit of the Willis
H. Lowe Company,— together with the agreement . . . to con-
tinue his loans to the corporation, that is, his indorsement of
the corporation's notes, without any . . . interest for himself,
and also . . . Dodge's agreement . . . to pool his common
stock in the voting trust, and give Lowe the option, hereinbefore
described. . . .   The benefit of  . . . such issue and transfer
enured partly to the corporation and partly to Lowe; but that
part . . . received by the corporation was of large and material
benefit to it."   It is found, that "there was no agreement be-
tween Lowe and Dodge that the eighty shares should be issued
to Dodge, or be held by him, as collateral security; . . . there
was no fraud in the . . . issuing the . . . shares . . . to . . .
Dodge; that the judgment of the . . . directors . . . was hon-
estly and bona fide exercised in the determination of the adequacy
and fair valuation of the consideration received by the . . .
corporation for such issue of stock; and that it was the honest
and bona fide judgment of such directors, when said vote was
passed, that the bona fide and fair valuation of the interest then
due from the corporation to Dodge, the services theretofore
rendered by Dodge to the corporation, the collateral previously
surrendered by Dodge for the corporation's benefit, and the
agreements which Dodge then offered to make as part of the
same transaction with the issue of the . . . shares, giving due
weight to the value of the . . . shares to be transferred by Lowe
. . . , was not less than eight thousand dollars."   The eighty
shares of preferred stock "were . . . issued . . . for adequate
consideration as conclusively determined by the directors . . . ;"
and "the . . . shares of common stock which . . . Lowe trans-
ferred to the defendant Dodge . .. . of which the defendant still
holds three hundred and fifty-three shares, were not given to him
by . . . Lowe, as averred in the . . . bill; but were transferred

. . . for valuable consideration furnished by Dodge to Lowe and . . . to the defendant corporation."

The evidence is not reported and these conclusions of fact, which dispose of all the allegations that the transfer was fraudulent and void, are not, as the plaintiff contends, inconsistent with the master's preliminary findings, but are supported by them, and accordingly they must stand. *East Tennessee Land Co.* v. *Leeson*, 183 Mass. 37, 38.

The refusal of the plaintiff's requests for additional findings are not subject to exception. *Warfield* v. *Adams*, 215 Mass. 506. The statute law of Maine as stated in the bill was not in controversy. The question was whether in the issuance of the stock the corporation had complied with it. The master's statement that the shares "were not issued contrary to the laws of the State of Maine," if deemed a ruling of law, as the plaintiff urges, was right; if treated as a conclusion of fact it is warranted by the record. See *Cook* v. *Bartlett*, 179 Mass. 576, 578; *Bradley* v. *Borden*, 223 Mass. 575. The twelfth request for rulings of law, which is the only request argued, that "If the directors on January 1, 1916, did not know of or ignored the transfer of common stock to the defendant Dodge by said Lowe in valuing any obligation claimed by Dodge to be due from the corporation, then their valuation was not a bona fide and fair valuation," was denied rightly. The question which was one of fact on all the evidence has been decided adversely to the plaintiff. It follows that the transfer was valid, and the defendant lawfully acquired title to the eighty shares of preferred stock. Rev. Sts. of Maine (1903) c. 47, §§ 50, 87. See *Libby* v. *Tobey*, 82 Maine, 397; *Mason* v. *Carrothers*, 105 Maine, 392. The plaintiff's numerous exceptions to the admission and exclusion of evidence as presented and argued in the brief need not be specifically considered. A careful examination discloses no prejudicial error. The interlocutory, and the final decree, should be affirmed with costs of the appeal.

*Ordered accordingly.*