MELVIN SHER *vs.* MALDEN TAXI, INC. & another.

Middlesex.    June 10, 1975. — June 25, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Contract,* For issuance of corporate stock.    *Corporation,* Capital contribution.

In an action by a plaintiff seeking a determination that he was entitled to the same proportion of the shares of a corporation as represented his contribution to the total equity investment in the corporation, evidence warranted a finding that the plaintiff's contribution was not a loan to the individual defendant and that the stock interests should be allocated between the plaintiff and the defendant in proportion to their capital contributions. [406-408]

Evidence in an action by a plaintiff seeking a determination that he was entitled to the same proportion of the shares of a corporation as represented his contribution to the total equity investment in the corporation warranted a finding that the value of the defendant's guarantee of a lease did not constitute a capital contribution [408]; and that the defendant's payment of a corporate debt was not a capital contribution but rather a loan to the corporation [408-409].

Where a promoter of a corporation obtained a loan for part of the purchase price of the corporate assets with the understanding that the corporation, when organized, would be liable for the loan, the loan did not represent a contribution to the equity investment in the corporation [409-410]; nor did the promoter's guarantee of certain notes represent a contribution to capital [410-411].

BILL IN EQUITY filed in the Superior Court on August 29, 1972.

The case was heard by *Beaudreau, J.*

*John P. Birmingham, Jr.,* for the plaintiff.

*Laurence M. Johnson* for the defendants.

GOODMAN, J.   The plaintiff's amended bill in equity brought in the Superior Court against the defendants David Goldberg (Goldberg) and Malden Taxi, Inc. (Malden), sought a determination that the plaintiff "is entitled to ownership of such shares of common stock of Malden Taxi, Inc. as represent the same proportion of ownership in Malden Taxi, Inc. as his investment bore to the total equity investment in the common stock of Malden Taxi, Inc." The defendants denied the plaintiff's version of the arrangement between the plaintiff and the defendants and counterclaimed for damages and an accounting, alleging that the plaintiff in his capacity as treasurer and general manager of Malden had not properly performed his duties.

The dispute has its origin in the purchase by Malden of the assets of various taxi cab companies controlled by two individuals (the Weiners). Malden was organized on May 13, 1969, to receive the assets and operate the companies, and the closing took place the following day. At the closing the sellers were paid $50,000 in cash, made up of $15,000 which Goldberg had previously procured from the plaintiff, $10,000 which Goldberg had borrowed from relatives, and $25,000 which Goldberg had borrowed under an arrangement with the Gibbs Oil Co. (Gibbs) to be more fully described hereafter; Malden also paid the sellers $25,000 in notes which Goldberg guaranteed.[1] In addition, Malden entered into a seven-year lease of real estate, from which the taxi cab business was to operate, with a realty trust of which the Weiners were the trustees. Goldberg and his wife guaranteed the lease.

Thereafter the plaintiff, until March, 1972, when he left, operated Malden's taxi cab business as general manager and was also treasurer and director of the corporation. He testified that he left because Goldberg had not given him the stock to which he was entitled. The plaintiff claims that the $15,000 which he gave Goldberg represented his

---

[1] The trial judge's finding that Goldberg's wife also guaranteed the notes seems to have been made inadvertently.

proportion of the total equity investment in Malden, that the entire equity invested was $25,000, and that he is therefore entitled to 15/25 or sixty percent of the issued capital stock. Goldberg claims that the $15,000 represented a loan from the plaintiff. The court made findings and rulings dated September 26, 1974 (Mass.R.Civ.P. 1A, par. 3, and Mass.R.Civ.P. 52[a], 365 Mass. 731 and 816-817 [1974]), that the plaintiff was entitled to 15/75 or twenty percent of the capital stock of Malden. He rejected Goldberg's testimony that the $15,000 was a loan as well as the defendants' counterclaim. All parties appealed; the evidence is reproduced in the appendix.

The defendants attack the trial judge's finding that the plaintiff is entitled to any stock and, in the alternative, urge that the amount of stock due the plaintiff should be reduced by reason of Goldberg's guarantee of the lease. The defendants make no argument contesting the dismissal of their counterclaim. The plaintiff urges his claim that the total capital investment is $25,000 and that his capital contribution of $15,000 therefore entitles him to 60% of the stock. We discuss these contentions in turn.

## The Defendants' Appeal.

1. *The trial judge's findings.* The trial judge found that as a result of a number of conversations between April 1, 1969, and May 14, 1969, Goldberg, an accountant who "has become very familiar with the overall taxi business in the last twenty years . . . promised the plaintiff that if he invested $15,000 in the contemplated purchase of the Malden Taxi, Inc., at the price of $70,000, that he, Melvin Sher, would receive 15/70ths of the common stock to be issued of the contemplated corporation, Malden Taxi, Inc." and "that the reason why Melvin Sher left the employ of Malden Taxi, Inc., in March of 1972, was because the defendant, David Goldberg, refused to issue him the proportionate share of common stock in Malden Taxi, Inc., that he had agreed to in April-May of 1969." The trial judge rejected "the explanation of the defendant [Goldberg] that the $15,000 received by him from Mr. Sher was a loan

made with the understanding that if Mr. Sher also went to work for Malden Taxi, Inc., as general manager and did a good job, as such, that he, Mr. Sher, would receive 'some stock in Malden Taxi, Inc., in the future,' without any commitment whatsoever to issue any particular number or proportion of shares of stock." The trial judge found "that the total equity investment in Malden Taxi, Inc. was $75,000"; he analyzed the transaction and concluded that "the valid contributions to the capitalization of the Malden Taxi, Inc., for the shares of stock that should have been issued on May 14th, 1969, would be . . . $75,000 — [o]f which 15/75ths, or twenty percent, would be the capital investment of Melvin Sher, and the remaining eighty percent the capital investment of David Goldberg."

Reading the trial judge's findings and rulings as a whole it is clear that he chose to believe the plaintiff, who testified that Goldberg told him that the Weiners wanted to sell their cab operations in Malden, that Goldberg "said it would require an investment of about $70,000," and that the plaintiff "could invest any portion that I felt I could handle of the total investments, which he [Goldberg] said were approximately $70,000." The trial judge refused to believe Goldberg, who categorically denied that he "told him [the plaintiff] that in return for his $15,000, he would become entitled to a proportional share of the stock in the company" and maintained that the plaintiff had lent him $15,000, on which no interest was apparently paid and which was not evidenced by a note. The defendants point out various circumstances which raise inferences inconsistent with the plaintiff's contention. But it is undisputed that the plaintiff was treasurer, director, and general manager of Malden and was a guarantor of Malden's contract with Gibbs to buy its requirements of petroleum products and of a $25,000 loan from Gibbs to Malden. Our examination of the evidence leads us to conclude that giving "due regard . . . to the opportunity of the trial court to judge of the credibility of the witnesses" (Mass.R.Civ.P. 52(a), 365 Mass. 816 [1974]) the judge was not clearly erroneous in resolving the clear cut issue between the parties as he

did and in concluding that stock interests should be allocated between the plaintiff and Goldberg in proportion to their capital contributions.

2. *The guarantee of the lease.* Goldberg also claims that as part of the "equity investment," on which the trial judge based his calculation of the stock due the plaintiff, Goldberg was entitled to include the value of his guarantee of the seven-year lease (also guaranteed by his wife) at $3,500 per month, creating a potential liability of $294,000. The trial judge was well warranted in his finding that the guarantee "was not a capital contribution." He found that the only stock which had been authorized and issued on May 14, 1969, as evidenced by a certificate of condition filed by Goldberg, was one hundred shares for $25,000.[2] The trial judge's point is well taken that "[i]t is incongruous that the Certificate of Condition filed by David Goldberg, an experienced accountant, would show that the 100 shares of stock issued to him was in consideration of $25,000, but that as a result of the present litigation, David Goldberg now wishes to be credited with a $294,000 capital contribution." He also found that there was no "intention that it be so considered at the time it was given on May 14th, 1969."[3] The trial judge was justified in accepting the transaction as Goldberg had cast it. See *Cain* v. *Cain*, 3 Mass. App. Ct. 467, 471-472 (1975). Indeed, Goldberg testified that the company was capitalized with the $25,000, $15,000 of which he had received from the plaintiff and $10,000 from relatives.

The trial judge was likewise well justified in rejecting Goldberg's claim that capital contributions arose out of the obligations of $122,500 in settlement on June 28, 1972, of a suit on the lease as a result of which the lease was can-

---

[2] The minute book and other records of the corporation were missing. The stock certificate stub entered as an exhibit indicated that the stock had been issued May 13, 1969.

[3] He further found that this "was an attempt on the part of Mr. Goldberg to retrace his steps after the present litigation was started, and to attempt to reverse a decision once made by him, that is, to issue all the shares of the Malden Taxi, Inc., for, at most, $25,000."

celled. The transaction, as structured by the Weiners and Goldberg, included a promise by Malden to pay $122,500, of which Malden obligated itself to pay $22,500 in cash and $100,000 in periodic payments evidenced by a note for $100,000 guaranteed by Goldberg and his wife and secured by a mortgage of Malden's real estate. The sum of $22,500 was paid at the date of the settlement by a check obtained by Goldberg from another taxi cab company in which, he testified, his son had an interest. The trial judge points out that Goldberg produced no "check or credible evidence that he later personally 'replaced' the money in part by a check payable to the ... [cab company]" and made no finding that the debt, which did arise, was owed to Goldberg. The trial judge obviously did not believe Goldberg's testimony that the $22,500 was intended as a capital contribution but found it to be a loan to Malden. Here again we cannot say that the trial judge was clearly erroneous in accepting at face value the transaction as set out in the documents.

Moreover, the trial judge pointed out that no evidence was introduced at trial as to the value of the various guarantees. And, indeed, Goldberg made no attempt to do so or to separate out the value of his guarantees from those of his wife. Compare *Whaler Motor Inn, Inc.* v. *Parsons,* 3 Mass. App. Ct. 662, 669, 675-676 (1975), which was specifically tried on the basis of crediting the promoters with the value of their services — an issue in the case.

## The Plaintiff's Appeal.

3. *The Gibbs loan.* We do not believe that the trial judge was justified in treating as "a capital contribution made by ... Goldberg" the $25,000 which was paid as part of the purchase price and which Goldberg had obtained as a loan from Gibbs. Goldberg testified that the loan was with the understanding that it would be paid by Malden, when organized, in connection with its purchase of petroleum products and that, as the promoter of Malden, it was his intention "as soon as the company was set up to enter into a written agreement with the Gibbs Oil Co. whereby

Malden Taxi would pay the $25,000 loan." This intention was effected when the $25,000 was paid as part of the purchase price for the assets which Malden received. Malden thereby accepted the Gibbs loan and became liable on the arrangement between Goldberg and Gibbs, which was thereafter memorialized in a written contract between Malden and Gibbs and guaranteed by Goldberg, Mrs. Goldberg, and the plaintiff. *Holyoke Envelope Co.* v. *United States Envelope Co.* 182 Mass. 171, 174-175 (1902). *Albiani* v. *Loudd, ante,* 165, 167 (1976). Richards, The Liability of Corporations on Contracts Made by Promoters, 19 Harv. L. Rev. 97, 104 (1905). Indeed, Goldberg testified that "as soon as the company got set up and running, the company started paying on the $25,000 loan." It cannot thus be said that the Gibbs loan represented a contribution to the equity of Malden; it became a debt of Malden immediately on its use as intended to purchase the taxi cab assets. The evidence all points to the conclusion that it was never intended as "a genuine addition to the property permanently dedicated to the business enterprise." See *Hood Rubber Co.* v. *Commonwealth,* 238 Mass. 369, 371 (1921); *Bailey* v. *Clark,* 88 U. S. (21 Wall.) 284, 286-287 (1874).

4. *The Malden notes.* The $25,000 in notes was obviously debt rather than equity, and the defendants do not argue to the contrary. They argue rather that Goldberg's guarantee should be treated as a contribution to capital, citing *Rodgers* v. *Dodge,* 243 Mass. 295 (1922). See *Whaler Motor Inn* v. *Parsons,* 3 Mass. App. Ct. at 669. But, as with the guarantee of the lease and the Gibbs loan, there is nothing in Goldberg's testimony or otherwise to indicate that it was so considered by anyone. Further, it is inconsistent with Goldberg's testimony that Malden was capitalized at $25,000 with his $10,000 and the plaintiff's $15,000 — corroborated by the only documentary evidence available from the books and records of the corporation (see fn. 2, and related text). The trial judge appears to have rejected any contention that Goldberg's guarantee

entitled him to the stock.[4] Moreover, as with the lease, there was no attempt to establish a value for the guarantees.

Accordingly we believe that it was clearly erroneous (see *United States* v. *Gypsum Co.* 333 U. S. 364, 395 (1948); Wright & Miller, Federal Practice and Procedure, § 2585 [1971]) for the court to count the $50,000 represented by the Gibbs loan and the Malden notes as Goldberg's capital contribution. The plaintiff is therefore entitled not to twenty percent (15/75) of the capital stock but rather to sixty percent (15/25). Since the parties do not question the form of the judgment it is to be modified by changing twenty percent to sixty percent and 15/75 to 15/25 wherever they respectively occur, and as so modified the judgment is affirmed. Costs of these appeals shall be taxed against the defendant Goldberg.

*So ordered.*

---

[4] He pointed out in his findings that "the $25,000 represented by the five notes dated May 14th, 1969, at the time of closing, were paid by the Malden Taxi, Inc., and not by David Goldberg. Retroactively, the defendant, David Goldberg, wants the Court to confer shares of common stock of the Malden Taxi, Inc., on him for a past guarantee — all at a time when the corporate debts have been paid and there is no longer any real risk in having an equity position instead of a debt position."