Harold E. HANEWALD, d/b/a Hanewald & Sons, Inc.; Plaintiff and Appellant,

and

Hanewald & Sons, Inc., Plaintiff,

v.

BRYAN'S INC., a North Dakota corporation; George D. Bryan; Keith L. Bryan; and Joan Bryan, Defendants and Appellees,

and

Camilla Larson, Defendant.

Civ. No. 870324.

Supreme Court of North Dakota.

Sept. 20, 1988.

Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, for plaintiff and appellant; argued by Ward M. Kirby. Appearance by Timothy A. Priebe.

Zuger, Kirmis, Bolinske & Smith, Bismarck, for defendants and appellees; argued by Jerry W. Evenson.

MESCHKE, Justice.

Harold E. Hanewald appealed from that part of his judgment for $38,600 plus interest against Bryan's, Inc. which refused to impose personal liability upon Keith, Joan, and George Bryan for that insolvent corporation's debt. We reverse the ruling that Keith and Joan Bryan were not personally liable.

On July 19, 1984, Keith and Joan Bryan incorporated Bryan's, Inc. to "engage in and operate a general retail clothing, and related items, store...." The Certificate

of Incorporation was issued by the Secretary of State on July 25, 1984. The first meeting of the board of directors elected Keith Bryan as president and Joan Bryan as secretary-treasurer of Bryan's, Inc. George Bryan was elected vice-president, appointed registered agent, and designated manager of the prospective business. The Articles of Incorporation authorized the corporation to issue "100 shares of common stock with a par value of $1,000 per share" with "total authorized capitalization [of] $100,000.00." Bryan's, Inc. issued 50 shares of stock to Keith Bryan and 50 shares of stock to Joan Bryan. The trial court found that "Bryan's, Inc. did not receive any payment, either in labor, services, money, or property, for the stock which was issued."

On August 30, 1984, Hanewald sold his dry goods store in Hazen to Bryan's, Inc. Bryan's, Inc. bought the inventory, furniture, and fixtures of the business for $60,000, and leased the building for $600 per month for a period of five years. Bryan's, Inc. paid Hanewald $55,000 in cash and gave him a promissory note for $5,000, due August 30, 1985, for the remainder of the purchase price. The $55,000 payment to Hanewald was made from a loan by the Union State Bank of Hazen to the corporation, personally guaranteed by Keith and Joan Bryan.

Bryan's, Inc. began operating the retail clothing store on September 1, 1984. The business, however, lasted only four months with an operating loss of $4,840. In late December 1984, Keith and Joan Bryan decided to close the Hazen store. Thereafter, George Bryan, with the assistance of a brother and local employees, packed and removed the remaining inventory and delivered it for resale to other stores in Montana operated by the Bryan family. Bryan's, Inc. sent a "Notice of Rescission" to Hanewald on January 3, 1985, in an attempt to avoid the lease. The corporation was involuntarily dissolved by operation of law on August 1, 1986, for failure to file its annual report with the Secretary of State.

Bryan's, Inc. did not pay the $5,000 promissory note to Hanewald but paid off the rest of its creditors. Debts paid included the $55,000 loan from Union State Bank and a $10,000 loan from Keith and Joan Bryan. The Bryan loan had been, according to the trial court, "intended to be used for operating costs and expenses."

Hanewald sued the corporation and the Bryans for breach of the lease agreement and the promissory note, seeking to hold the Bryans personally liable. The defendants counterclaimed, alleging that Hanewald had fraudulently misrepresented the business's profitability in negotiating its sale. After a trial without a jury, the trial court entered judgment against Bryan's, Inc. for $38,600 plus interest on Hanewald's claims and ruled against the defendants on their counterclaim. The defendants have not cross appealed these rulings.

The trial court, however, refused to hold the individual defendants personally liable for the judgment against Bryan's, Inc., stating:

> "Bryan's, Inc. was formed in a classic manner, the $10,000.00 loan by Keith Bryan being more than sufficient operating capital. Bryan's Inc. paid all obligations except the obligation to Hanewald in a timely fashion, and since there was no evidence of bad faith by the Bryans, the corporate shield of Bryan's Inc. should not be pierced."

Hanewald appealed from the refusal to hold the individual defendants personally liable.

Insofar as the judgment fails to impose personal liability upon Keith and Joan Bryan, the corporation's sole shareholders, we agree with Hanewald that the trial court erred. We base our decision on the Bryans' statutory duty to pay for shares that were issued to them by Bryan's, Inc.

■ Organizing a corporation to avoid personal liability is legitimate. Indeed, it is one of the primary advantages of doing business in the corporate form. *See generally* 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 14 (1983); J. Gillespie, *The Thin Corporate Line: Loss of Limited Liability Protection,* 45 N.D.L.

Rev. 363 (1969). However, the limited personal liability of shareholders does not come free. As this court said in *Bryan v. Northwest Beverages*, 69 N.D. 274, 285 N.W. 689, 694 (1939), "[t]he mere formation of a corporation, fixing the amount of its capital stock, and receiving a certificate of incorporation, do not create anything of value upon which the company can do business." It is the shareholders' initial capital investments which protects their personal assets from further liability in the corporate enterprise. *See Cross v. Farmers' Elevator Co. of Dawson*, 31 N.D. 116, 153 N.W. 279, 282 (1915); *Jablonsky v. Klemm*, 377 N.W.2d 560, 566 (N.D.1985) (quoting *Briggs Transp. Co. v. Starr Sales Co.*, 262 N.W.2d 805, 810 (Iowa 1978)) ["shareholders should in good faith put at the risk of the business unencumbered capital reasonably adequate for its prospective liabilities."]; and J. Gillespie, *supra*, 45 N.D.L.Rev. at 388 ["Proper capitalization might be envisioned as the principal prerequisite for the insulation of limited liability."]. Thus, generally, shareholders are not liable for corporate debts beyond the capital they have contributed to the corporation. *See* 1 F. O'Neal and R. Thompson, *O'Neal's Close Corporations* § 1.09 (3rd ed. 1987).

This protection for corporate shareholders was codified in the statute in effect when Bryan's, Inc. was incorporated and when this action was commenced, former § 10–19–22, N.D.C.C.[1]:

> "*Liability of subscribers and shareholders.*—A holder of or subscriber to shares of a corporation shall be under no obligation to the corporation or its creditors with respect to such shares other than the obligation to pay to the corporation the full consideration for which such shares were issued or to be issued."

This statute obligated shareholders to pay for their shares as a prerequisite for their limited personal liability.

The kinds of consideration paid for corporate shares may vary. Article XII, § 9 of the state constitution says that "[n]o corporation shall issue stock or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void." Section 10–19–16, N.D.C.C., allowed "[t]he consideration for the issuance of shares [to] be paid, in whole or in part, in money, in other property, tangible or intangible, or in labor or services actually performed for the corporation. . . . [But] [n]either promissory notes nor future services shall constitute payment or part payment for shares of a corporation." And only "[w]hen payment of the consideration . . . shall have been received by the corporation, [can] such shares . . . be considered fully paid and nonassessable."[2] *Id.* The purpose of these constitutional and statutory provisions is "to protect the public and those dealing with the corporation. . . ." *Bryan v. Northwest Beverages, supra*, 285 N.W. at 694.

■ In this case, Bryan's, Inc. was authorized to issue 100 shares of stock each having a par value of $1,000. Keith Bryan and Joan Bryan, two of the original incorporators and members of the board of directors, were each issued 50 shares. The trial court determined that "Bryan's Inc. did not receive any payment, either in labor, services, money, or property, for the stock which was issued." Bryans have not challenged this finding of fact on this appeal. We hold that Bryans' failure to pay for their shares in the corporation makes them personally liable under § 10–19–22, N.D.C.C., for the corporation's debt to Hanewald.

■ Drafters' comments to § 25 of the Model Business Corporation Act, upon which § 10–19–22 was based, sketched the principles:

---

1. After June 30, 1986, Chapter 10–19.1, N.D.C.C., became applicable "to all existing corporations incorporated under any chapter of this code. . . .", replacing Chapter 10–19. § 10–19.1–04, N.D.C.C. Section 10–19.1–69, N.D.C.C., which is identical in substance to former § 10–19–22, N.D.C.C., is the current provision governing liability of subscribers and shareholders with respect to their shares.

2. Section 10–19.1–63(1)(a), N.D.C.C., is the current provision governing consideration for shares in a corporation.

"The liability of a subscriber for the unpaid portion of his subscription and the liability of a shareholder for the unpaid balance of the full consideration for which his shares were issued are based upon contract principles. The liability of a shareholder to whom shares are issued for overvalued property or services is a breach of contract. These liabilities have not been considered to be exceptions to the absolute limited liability concept.

"Where statutes have been silent, courts have differed as to whether the cause of action on the liabilities of shareholders for unpaid consideration for shares issued or to be issued may be asserted by a creditor directly, by the corporation itself or its receiver, or by a creditor on behalf of the corporation. The Model Act is also silent on the subject for the reason that it can be better treated elsewhere." 1 Model Business Corporation Act Annotated 2d, Comment to § 25, at pp. 509–510 (1971).

This court, in *Marshall–Wells Hardware Co. v. New Era Coal Co.*, 13 N.D. 396, 100 N.W. 1084 (1904), held that creditors could directly enforce shareholders' liabilities to pay for shares held by them under statutes analogous to § 10–19–22. We believe that the shareholder liability created by § 10–19–22 may likewise be enforced in a direct action by a creditor of the corporation.

Our conclusion comports with the generally recognized rule, derived from common law, that "a shareholder is liable to corporate creditors to the extent his stock has not been paid for." 18A Am.Jur.2d *Corporations* § 863, at p. 739 (1985). *See also, Id.* at §§ 906 and 907. One commentator has observed:

"For a corporation to issue its stock as a gratuity violates the rights of existing stockholders who do not consent, and is a fraud upon subsequent subscribers, and upon subsequent creditors who deal with it on the faith of its capital stock. The former may sue to enjoin the issue of the stock, or to cancel it if it has been issued, and has not reached the hands of a bona fide purchaser; and the latter, according to the weight of authority, may compel payment by the person to whom it was issued, to such extent as may be necessary for the payment of their claims." 11 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 5202, at p. 450 (1986).

*See also Providence State Bank v. Bohannon*, 426 F.Supp. 886, 890 (E.D.Mo.1977), *aff'd*, 572 F.2d 617 (8th Cir.1978); *Eubanks v. Allstate Insurance Co.*, 441 F.2d 7 (5th Cir.1971); and *Sieb's Hatcheries v. Lindley*, 108 F.Supp. 415 (W.D.Ark.1952). The shareholder "is liable to the extent of the difference between the par value and the amount actually paid," and "to such an extent only as may be necessary for the satisfaction of" the creditor's claim. 11 W. Fletcher, *supra*, § 5241, at pp. 550, 551.

■ The defendants asserted, and the trial court ruled, that the $10,000 loan from Keith and Joan Bryan to the corporation was nevertheless "more than sufficient operating capital" to run the business. However, a shareholder's loan is a debt, not an asset, of the corporation. Where, as here, a loan was repaid by the corporation to the shareholders before its operations were abandoned, the loan cannot be considered a capital contribution. *See Sher v. Malden Taxi, Inc.*, 4 Mass.App. 404, 349 N.E.2d 366, 370–371 (1976); *Amfac Mechanical Supply Co. v. Federer*, 645 P.2d 73, 79–80 (Wyo.1982); *J.L. Brock Builders, Inc. v. Dahlbeck*, 223 Neb. 493, 391 N.W.2d 110, 116 (1986).[3]

---

**3.** There are some circumstances in which a shareholder's loan to the corporation may be treated as a capital contribution. *See* 12B W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 5739 (1984). In bankruptcy proceedings, for example, a shareholder's loans to his corporation can be treated as capital contributions when a corporation is deemed undercapitalized. *See Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Matter of Multi-ponics, Inc.*, 622 F.2d 709 (5th Cir.1980). However, the result in this class of cases is an equitable subordination of the shareholder's claim to the claims of other creditors, which is consistent in principle with the result we reach today. *See also, Jablonsky v. Klemm, supra,* 377 N.W.2d at 570 (Justice Meschke, concurring: "However, the finder of fact might also have viewed the largely uncompensated services of Klemm, the principal officer and stockholder,

We conclude that the trial court, having found that Keith and Joan Bryan had not paid for their stock, erred as a matter of law in refusing to hold them personally liable for the corporation's debt to Hanewald. The debt to Hanewald does not exceed the difference between the par value of their stock and the amount they actually paid. Therefore, we reverse in part to remand for entry of judgment holding Keith and Joan Bryan jointly and severally liable for the entire corporate debt to Hanewald. The judgment is otherwise affirmed.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

as additional contribution to capital, rather than as simply another liability contributing to the insolvency of the corporation.")