838 A.2d 1204

**John E. HILDRETH**

v.

**TIDEWATER EQUIPMENT COMPANY, INC.**

**No. 32, Sept. Term, 2003.**

Court of Appeals of Maryland.

Dec. 18, 2003.

726

Robert C. Kostecka (David P. Korteling of Caplan, Buckner
& Kostecka, Chartered, on brief), Bethesda, for petitioner.

Brenda S. Fishbein (Fishbein & Fishbein, P.A., on brief), Ellicott City, for respondent.

Argued before BELL, C.J. and ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

WILNER, Judge.

The issue before us is whether the Circuit Court for Howard County erred in entering judgment on a corporate debt against petitioner, John Hildreth, and whether the Court of Special Appeals erred in affirming that judgment. We shall conclude that both courts were in error and shall reverse.

## BACKGROUND

Hildreth was the sole shareholder, director, and officer of a New Jersey corporation known as HCE, Inc., which, for convenience, we shall sometimes refer to as HCE–NJ. The corporation, formed in November, 1996, engaged in the construction business as a subcontractor on various commercial construction projects. At some point in late 1996 or 1997, HCE, Inc. began to do business in Maryland and opened an office in Columbia.[1] Although Hildreth had formed a number of other corporations in Maryland, one of which, Hildreth Contracting and Engineers, Inc., had forfeited its charter in October, 1996, he did not register HCE–NJ in this State, as required by Maryland Code, §§ 7–202, 7–202.1, or 7–203 of the Corporations and Associations Article. Those sections, respectively, require that foreign corporations register with the Maryland Department of Assessments and Taxation before doing any interstate, foreign, or intrastate business in Mary-

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Hildreth maintained that HCE, Inc. did not begin to do business in Maryland until June, 1998. The Circuit Court found that it began business here in 1996 or 1997, and, for purposes of this appeal, Hildreth does not challenge that finding.

land. Registration requires that the corporation have a resident agent in Maryland and that it certify to the Department the address of the corporation and the name and address of the resident agent.

When HCE–NJ began to do business in Maryland, there was already existing a Maryland corporation by the name of HCE, Inc., which, for convenience, we shall refer to as HCE–Md. HCE–Md, incorporated here in 1985, had no connection with the New Jersey corporation or with Hildreth and was in the business of renting portable toilets. So far as this record reveals, the two corporations had no common customers or business creditors. At some point in late 1997, HCE–Md began receiving calls from suppliers with which it had no connection, complaining about unpaid bills, as well as suit papers intended for HCE–NJ. Looking in the telephone book, HCE–Md's president, Harry Boyce, learned of the existence of the other HCE, called the number listed, and, being unable to get through to an individual, left a message asking that the company refrain from using the name HCE. Boyce said that he left that message twice. Ultimately, Boyce learned of Hildreth's existence and caused HCE–Md's attorney, in January, 1998, to write to Hildreth, complaining about HCE–NJ's use of the HCE name and threatening legal action if such use did not cease immediately.

Evidence indicated that such use did not stop, as Boyce continued to receive correspondence from creditors of HCE–NJ and even information that HCE–NJ, using the name HCE, Inc., had filed suit in a Maryland court against the Marriott Corporation. Finally, in September, 1999, HCE–NJ registered with the Department of Assessments and Taxation under the name HCE of New Jersey, Inc.

The contract that led to the lawsuit against Hildreth was with respondent, Tidewater Equipment Company, Inc., which was in the business of renting cranes. In February, 1998, HCE–NJ rented a 20–ton capacity crane from Tidewater for one or two days and paid the rental charge as agreed. In September, 1998, HCE–NJ commenced negotiations for the

long-term rental of a crane that it intended to use in connection with a construction project in Alexandria, Virginia. The initial contact was made by an employee other than Hildreth, but Hildreth was not satisfied with the price demanded by the Tidewater salesman. Hildreth then contacted and negotiated with another Tidewater representative, Frank Kolbe, and eventually received a better price. In the course of the negotiations, Kolbe dealt with at least one other employee of HCE–NJ, Bob Condin. Condin informed Kolbe that HCE–NJ built metal walls, that its plant was in Hanover, Maryland, and that it needed the crane to load the walls on to trucks for shipment to Alexandria.

Hildreth made clear he was acting for "HCE, Inc.," but neither said nor was asked where that company was incorporated. He informed Kolbe that the company had an office in Columbia, Maryland. Kolbe visited both the Columbia office and the Hanover job site. He testified that the company "didn't appear to be a fly-by-night operation," but had "a nice office suite" and "numerous employees." The job site in Hanover was also substantial, with "a huge warehouse," a rail siding, and "hundreds of metal building panels." Kolbe assumed that HCE–NJ was a Maryland corporation because it had an office in Columbia. He did not order a credit report but, in agreeing to the lease, apparently relied on his site visits, his conversations with Bob Condin, his seeing the subcontracts that HCE–NJ had with the contractor, Erkiletian Construction Corp., and Hildreth's oral assurance that Tidewater would be paid in accordance with the quoted terms.

The arrangement was memorialized in a series of daily contracts, as the equipment was needed, commencing in September, 1998. The rental started at $500/day plus a charge for the operator, but later was reduced to $455/day plus operator. The charges were initially billed on a weekly basis but were then converted to a monthly billing. Payment was due within 30 days, with interest at 2% per month on unpaid balances. Hildreth did not sign the contracts; they were signed on behalf of HCE–NJ by some other employee. The charges for September, October, and November, 1998, were

paid in January and February, 1999. When payments were not received thereafter, Tidewater, in April, 1999, re-took possession of the equipment. At the time, Tidewater was owed $47,246 for the months of December, January, February, and March, and for a few days in April.

In an amended complaint filed in the Circuit Court for Howard County against HCE of New Jersey, Inc., Hildreth Contractors & Engineers, Inc., and Hildreth individually, Tidewater alleged the lease of equipment and a statement of account showing $47,246 as principal due and owing, along with $7,784 in accrued interest. The suit was for those amounts, plus daily accruing interest thenceforth and attorneys' fees, provided for in the contracts, in the amount of 15%, or $7,086. The only allegations made against Hildreth individually were that (1) he operated a business at 9220 Rumsey Road in Columbia trading as HCE, Inc., (2) the corporation for which he acted with respect to Tidewater was "HCE of New Jersey, Inc. t/a HCE, Inc. and/or Hildreth Contractors & Engineers, Inc., t/a HCE, Inc.", (3) he "individually and t/a HCE, Inc. acted as if he had the authority to bind HCE, Inc. to the contract which forms the basis of the instant litigation," and (4) "he had no authority to act on behalf of the Maryland corporation known as HCE, Inc. and he is therefore personally liable for the debts incurred herein."

As the case proceeded, the court entered summary judgment in favor of Hildreth Contractors & Engineers, Inc. but against HCE–NJ. In August, 2001, a non-jury trial was held with respect to the claim against Hildreth individually. The contracts, shown to be between Tidewater and "HCE, Inc." were stipulated, as were the amounts alleged to be due under those contracts. It was agreed that HCE, Inc. was lawfully incorporated in New Jersey and that it eventually registered to do business in Maryland in September, 1999, under the name HCE of New Jersey, Inc., and it was also agreed that Hildreth did not sign any of the contracts with Tidewater. Tidewater's theory of personal liability was that Hildreth was essentially an agent acting for an undisclosed principal—that he represented that he was acting for "HCE, Inc." but that he

was not, in fact, acting for that corporation because he had no authority to do so, and that he never disclosed that his real principal was the New Jersey corporation.

Relying on *Hill v. County Concrete*, 108 Md.App. 527, 672 A.2d 667 (1996), the Circuit Court credited that argument. The court found that Hildreth knew that there was a Maryland corporation known as HCE, Inc. and that he had no right to do business here under that name, but that Tidewater did not know there was another HCE, Inc. or that the company operated by Hildreth was a New Jersey corporation. The court concluded that "[t]he existence of a de jure Maryland corporation with the name HCE, Inc., means John Hildreth did not fully disclose his principal, HCE, Inc., to be a New Jersey corporation, nor did he partially disclose his principal." It found further:

"As to Tidewater, the identity of the principal was not disclosed and after the notices to John Hildreth from Mr. Boyce at HCE, Inc. of Maryland and the letter from his attorney in January, 1998, his continued use of HCE, Inc. was in bad faith. Consequently, John Hildreth is personally liable on the contract to Tidewater."

Upon that finding, the court entered judgment against Hildreth, personally, for the entire corporate debt, including interest and attorneys' fees.

Hildreth appealed, arguing that (1) officers and directors of a foreign *de jure* corporation are not personally liable for corporate debts solely because the corporation fails to qualify to do business in Maryland, (2) the trial court erred in finding Hildreth liable as an agent for an undisclosed to partially disclosed principal, and (3) Tidewater was estopped from denying the existence of HCE–NJ when that corporation was a *de jure* corporation and Tidewater knew that it was dealing with a corporation. The Court of Special Appeals agreed that Hildreth was not acting as an agent for an undisclosed or partially disclosed principal and could not be held liable on that basis—the only basis asserted by the trial court. The only thing that was not disclosed, the court pointed out, was

the fact that the corporation in question—HCE-NJ—was a foreign corporation that had not registered to do business in Maryland. Tidewater knew that it was dealing with a corporation engaged in the construction—not the rent-a-toilet—business; it knew the actual name of the corporation and that it had offices not just in Maryland but in New Jersey and New York as well. The relationship was a contractual, not a fiduciary, one, and Hildreth therefore was under no duty to disclose HCE–NJ's status as an unregistered foreign corporation.

The intermediate appellate court also concluded that, as a general rule, officers and directors of a valid foreign corporation are not personally liable on corporate debts merely because the corporation fails to register to do business in the forum State, but, relying on a New Hampshire case, *Zenane, Inc. v. Tofer*, 127 N.H. 366, 499 A.2d 1347 (1985), it held that the court *could* impose such liability "when justice requires." Although acknowledging that "the traditional factors justifying veil piercing are not present here," the court determined that "this case nonetheless presents a situation in which the corporate form must be disregarded to 'enforce a paramount equity.'" We granted *certiorari* to review that ruling. No cross-petition was filed challenging the intermediate appellate court's conclusion that personal liability could not rest on the Circuit Court's determination that Hildreth was acting as an agent for an undisclosed or partially disclosed principal, so we shall not consider that question. The only issue before us is whether there was a basis for piercing the corporate veil of HCE–NJ and imposing personal liability for the corporate obligation on Hildreth.

## DISCUSSION

In *Bart Arconti & Sons v. Ames–Ennis*, 275 Md. 295, 310, 340 A.2d 225, 234 (1975), after reviewing pronouncements in earlier cases and the then-accepted treatise on Maryland corporation law, we stated:

"Although a number of variations upon the same theme may be found, the most frequently enunciated rule in Maryland is that although the courts will, in a proper case, disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist ... shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud or enforce a paramount equity."

That remains the law of Maryland. *Stein v. Smith,* 358 Md. 670, 682, 751 A.2d 504, (2000) ("[T]he corporate entity will be disregarded only when necessary to prevent fraud or to enforce a paramount equity." (*quoting Bart Arconti,* 275 Md. at 312, 340 A.2d at 235)).

As the Court of Special Appeals recognized, there was no allegation here of fraud on the part of either Hildreth or HCE NJ; nor was there any evidence or finding of fraud. Personal liability rested solely upon the notion of "paramount equity," which, in that court's view, arose from a combination of the following circumstances:

(1) Hildreth was the sole shareholder of HCE–NJ;

(2) Hildreth was "personally involved" in the business transaction with Tidewater, which the court viewed as "Hildreth's dirty hands";

(3) Continuing to trade as HCE, Inc. with knowledge of the existence of a Maryland corporation of that name was evidence of bad faith on Hildreth's part;

(4) Contracts made by unregistered foreign corporations, though valid, nonetheless constitute "illegal business transaction[s] on the part of the unregistered foreign corporation, for which that corporation and its agents, officers, directors, and shareholders may be penalized," which the court characterized as "[t]he public policy against illegal business transactions";

(5) Maryland law precludes unregistered corporations doing business in Maryland from seeking relief in Maryland courts, which the court regarded as "[t]he public policy

against unregistered corporations using Maryland courts to protect their illegal business transactions"; and

(6) The fact that HCE–NJ was registered after Tidewater's complaint was filed but was later forfeited in 2001 for failure to file a 2000 property return, which the court said "suggests a conscious evasion of responsibility on the part of HCE–NJ and Hildreth."

Although we have not heretofore given any generic definition of "paramount equity" in this context, it is abundantly clear from our actual holdings in cases where attempts were made to pierce a corporate veil—to hold stockholders personally liable for corporate obligations—that those circumstances, individually or in combination, do not suffice.

In a number of cases, including *Bart Arconti*, we made favorable reference to the synthesis supplied in the 1953 edition of Herbert Brune's work, MARYLAND CORPORATION LAW AND PRACTICE, § 371, as to when a corporate entity will be disregarded:

"*First.* Where the corporation is used *as a mere shield for the perpetration of a fraud,* the courts will disregard the fiction of separate corporate entity.

*Second.* The courts may consider a corporation as unencumbered by the fiction of corporate entity and deal with substance rather than form as though the corporation did not exist, *in order to prevent evasion of legal obligations.*

*Third.* Where the stockholders themselves, or a parent corporation owning the stock of a subsidiary corporation, *fail to observe the corporate entity, operating the business or dealing with the corporation's property as if it were their own,* the courts will also disregard the corporate entity for the protection of third persons."

(Emphasis added).

There is nothing in this record that could possibly justify the first of these circumstances. As already noted, there is no claim, no evidence, and no finding that Hildreth used HCE–NJ as "a mere shield for the perpetration of a fraud."

 The third circumstance embodies what is sometimes called the "alter ego" doctrine. Fletcher observes that the "alter ego" doctrine has been applied "where the corporate entity has been used as a subterfuge and to observe it would work an injustice," the rationale being that "if the shareholders or the corporations themselves disregard the proper formalities of a corporation, then the law will do likewise as necessary to protect individual and corporate creditors." 1 WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 41.10 at 574–76 (1999 Rev. Vol.). The doctrine, says Fletcher, is applied "with great caution and reluctance" and only in "exceptional circumstances." *Id.* at 579–80. Courts will apply the doctrine when the plaintiff shows (1) "complete domination, not only of the finances, but of policy and business practice in respect to the transaction so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own," (2) that "such control [was] used by the defendant to commit fraud or wrong, to perpetrate the violation of the statutory or other positive legal duty, or dishonest and unjust act in contravention of the plaintiff's legal rights," and (3) that such "control and breach of duty proximately caused the injury or unjust loss." *Id.* at 583–86. Because piercing the corporate veil is founded on equity, "where no fraud is shown, the plaintiff must show that an inequitable result, involving fundamental unfairness, will result from a failure to disregard the corporate form." *Id.* at 605.

 Although there appears to be no universal rule as to the specific criteria that courts will consider in determining whether to apply the doctrine, Fletcher observes that some of the factors commonly considered, when dealing with a single corporation, are (1) whether the corporation is inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit, (2) whether there is commingling of corporate and personal assets, (3) whether there are non-functioning officers or directors, (4) whether the corporation is insolvent at the time of the transaction, and (5) the absence of corporate records. *Id.*

§ 41.30 at 625–28. These factors, occasionally articulated somewhat differently, have been applied in earlier Court of Special Appeals cases. *See Dixon v. Process Corp.*, 38 Md. App. 644, 653, 382 A.2d 893, 899 (1978); *Travel Committee v. Pan Am.*, 91 Md.App. 123, 158–59, 603 A.2d 1301, 1318–19 (1992); *Residential Warranty v. Bancroft*, 126 Md.App. 294, 307, 728 A.2d 783, 789 (1999). *See also DeWitt Truck Brokers v. W. Ray Flemming Fruit Co.*, 540 F.2d 681 (4th Cir.1976), cited by the Court of Special Appeals in *Travel Committee*, and *Iceland Telecom v. Information Systems and Net.*, 268 F.Supp.2d 585, 589–91 (D.Md.2003).

■ There is no support in this record for basing personal liability on the "alter ego" doctrine. With respect to the more general factors mentioned by Fletcher, there is no evidence that Hildreth exercised such complete domination over HCE–NJ to warrant a conclusion that the corporation "had no separate mind, will or existence of its own." There is no evidence that HCE–NJ was undercapitalized, that corporate formalities were not observed,[2] that the corporation operated without a profit, that there were non-functioning officers or directors, that the company was insolvent when it entered into the arrangement with Tidewater, that there were no or inadequate corporate records. In part, this void in the record may well be due to the fact that Tidewater never sought in the trial court to establish liability on Hildreth's part by piercing the corporate veil of HCE–NJ, but argued only that Hildreth was acting as agent for an undisclosed or partially disclosed principal. As Hildreth legitimately complains, had the quest for personal liability on his part been premised on a piercing of the corporate veil, he might have supplied affirmative evidence

2. The "alter ego" doctrine must, of course, take account of close corporation laws, which commonly allow close corporations to elect not to have a board of directors and to have the corporation run directly by the stockholders. *See,* for example, Maryland Code, §§ 4–301—4–303 of the Corporations and Associations Article; N.J. Stat. § 14A:5–21. The record does not indicate whether HCE–NJ had elected close corporation status.

negating these various factors, even though it was Tidewater's burden to prove their existence.

What the record does show is that HCE–NJ was a valid, subsisting corporation which, until it suffered a reversal of fortunes, had substantial assets and business prospects. The relevant contracts, with the general contractor and with Tidewater, were in its name, and, indeed, the contracts with Tidewater were signed on its behalf not by Hildreth but by another employee. Although the conclusion is certainly warranted that Hildreth deliberately permitted HCE–NJ to operate in Maryland without benefit of registration and with knowledge of the existence of HCE–Md, there is no evidence that that conduct in any way influenced Tidewater to enter into the contractual arrangement from which this debt arose. Tidewater knew that it was dealing with a corporation, and it had satisfied itself that the corporation had substantial contracts and assets, that it had two business locations in the State, that it had numerous employees, and that it was not a "one man show." Kolbe's assumption that HCE–NJ was a Maryland corporation did not come from anything Hildreth said. Indeed, much of the information apparently relied upon by Kolbe in agreeing to the contract came from Condin, not Hildreth.

In sustaining liability on Hildreth's part, the Court of Special Appeals seemed to be applying the second in Brune's trilogy of circumstances, disregarding the corporate existence "in order to prevent the evasion of legal obligations." That, in turn, appears to rest on Hildreth's failure to register the corporation and his decision to continue using the name HCE, Inc. after being advised of the existence of HCE–Md., which the appellate court treated not only as bad faith but the violation of public policy. Tidewater sees that set of circumstances as an independent basis for "paramount equity," urging that "paramount equity" need not rest solely on the "alter ego" doctrine.

In *Bart Arconti*, we noted the "appealing quality" of the second (and third) of Brune's propositions, but also observed

that our cases have not given an expansive meaning to that proposition. *Bart Arconti*, itself, is a testament to the narrowness of that window. Bart Arconti & Sons, Inc. (Arconti & Sons) was a subcontractor on three construction projects and defaulted on each. The corporation, along with two allied corporations, was owned and controlled by two brothers, Bart and George Arconti. After the general contractor filed suit, the brothers allowed Arconti & Sons to become dormant and placed all new business in the other two corporations. They allowed those corporations to use Arconti & Sons assets without compensation and credited their personal indebtedness to Arconti & Sons on loans from that company against salaries allegedly due them. The trial court found that the purpose of those activities was to evade legal obligations during the pendency of the action and had the effect of rendering Arconti & Sons "all but insolvent." *Bart Arconti & Sons, supra*, 275 Md. at 305, 340 A.2d at 231. The court also found that the brothers, as dominant directors and sole stockholders, had "personally directed their operations with only one purpose in mind, using the [other two corporations] to keep the subcontracting business of [Arconti & Sons] but without leaving any real asset of [Arconti & Sons] remaining in that corporation." *Id.* Upon those findings, the trial court found reason to pierce the corporate veil of Arconti & Sons and extend the ultimate judgment in favor of the general contractor against the brothers individually.

The brothers appealed, and we reversed, noting that we were unaware "of any Maryland case where, on facts resembling those here, the Court has allowed the corporate entity to be disregarded merely because it wished to prevent an 'evasion of legal obligations'—absent evidence of fraud or similar conduct." *Id.* at 311–12, 340 A.2d at 235. Though confirming that a corporate entity will be disregarded when necessary to prevent fraud or to enforce a paramount equity, we did not regard the conduct of the brothers as sufficient to establish a paramount equity.

If the conduct in *Bart Arconti*, clearly designed to cause the corporation to evade a legal obligation, did not suffice to

justify disregarding the corporate entity, surely Hildreth's conduct here does not.[3] That conduct may have subjected him to a $1,000 fine pursuant to § 7–302(b) of the Corporations and Associations Article; it would have served as well to preclude the corporation from filing suit in Maryland, *see* § 7–301; and it may have rendered him or HCE–NJ liable to HCE–Md. Section 7–305 makes clear, however, that the failure of a foreign corporation to comply with the registration requirements "does not affect the validity of any contract to which the corporation is a party," and there is nothing in the registration statutes that permits a court to invade the corporate entity simply because of a failure to register.

We do not regard Brune's second proposition as a separate basis for piercing a corporate veil. With its very limited scope, yet to be actually found in any Maryland case, it is, at best, subsumed, along with the "alter ego" doctrine, in the notion of paramount equity, and has no application in this case. The record here reveals nothing more than the fact that a valid, subsisting corporation entered into a commercial contract and later became unable to satisfy its obligation under that contract. That is unfortunate, but it is not a basis for making someone else liable for the corporate debt.

Concerned that we may not agree with his argument under Maryland law, Hildreth presents the alternative argument that, as HCE–NJ was a New Jersey corporation, his liability as a stockholder of that corporation must be determined under New Jersey law. As we do agree with his primary argument, however, we need not reach that issue.

JUDGMENT OF COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE JUDGMENT OF CIR-

---

**3.** There have been dozens of cases, some more than 100 years old, in which the Court has either sustained or reversed the piercing of corporate entities. The cases are largely fact-specific, and there is no profit to be gained in discussing them. The law was effectively enunciated in *Bart Arconti*. *See Starfish Condo. v. Yorkridge Serv.*, 295 Md. 693, 458 A.2d 805 (1983) and *Antigua Condominium v. Melba Investors*, 307 Md. 700, 517 A.2d 75 (1986).

**740**

CUIT COURT FOR HOWARD COUNTY AGAINST PÉTI-
TIONER; COSTS IN THIS COURT AND COURT OF
SPECIAL APPEALS TO BE PAID BY RESPONDENT.