2016 ND 172

Eugene E. TASZAREK, Marlys J. Taszarek, Trina F. Schilling, Steven E. Taszarek, and Michael E. Taszarek, Plaintiffs and Appellees

v.

LAKEVIEW EXCAVATING, INC., Brian Welken, German Township and Dickey County, Defendants

Brian Welken, Appellant.

No. 20150189.

Supreme Court of North Dakota.

Aug. 31, 2016.

Peter Gifford (argued) and Steven J. Lies (appeared), Wahpeton, N.D., for plaintiffs and appellees.

Douglas W. Gigler, Fargo, N.D., for appellant.

McEVERS, Justice.

[¶ 1] Brian Welken appeals from a judgment entered after a jury returned a verdict in favor of Eugene Taszarek, Marlys Taszarek, Trina Schilling, Steven Taszarek, and Michael Taszarek ("Taszareks") and against Lakeview Excavating, Inc., ("Lakeview") and Welken. We conclude Welken failed to preserve whether the district court misapplied the law by allowing the jury to resolve whether Lakeview was the alter ego of Welken. We further conclude, however, that the court erred as a matter of law in inadequately instructing the jury regarding the alter ego doctrine. We reverse the judgment and remand for a new trial.

I

[¶ 2] At the times relevant to this action, Lakeview was a corporation primarily involved in flood control projects, and Welken was Lakeview's president and sole shareholder. In the spring of 2012, German Township in Dickey County solicited bids for road construction projects to repair and raise the grade of a road near the Taszareks' property. Lakeview, acting through Welken, successfully bid and was selected as the contractor for the road projects.

[¶ 3] As part of the projects, Lakeview was responsible for obtaining construction materials, including field rock. Lakeview obtained most of its field rock for the German Township project from area farmers and ranchers with rock piles on their properties. Lakeview arranged with landowners to harvest rocks from their fields and reclaim the ground so it could again be farmed, and landowners allowed Lakeview to remove rock piles. Herb Buerkley owns land in Dickey County adjacent to land owned by the Taszareks, and Buerkley permitted Lakeview to enter his family's property to harvest field rock.

[¶ 4] During the project, Welken directed Lakeview's employees to enter

property to take the materials for the road project. While harvesting the rock piles from Buerkley's land, Lakeview's employees crossed into the Taszareks' land and harvested field rock. Both the Buerkley land and the adjacent Taszareks' land were in the Conservation Reserve Program without a fence separating the land. The field rock taken from the Taszareks' property was ultimately used for the German Township road projects.

[¶ 5] The Taszareks brought an action against both Lakeview and Welken, asserting claims of intentional trespass, conversion, and unjust enrichment arising from Lakeview's work on the German Township road-raising project. The district court held a jury trial on the Taszareks' trespass and conversion claims against Lakeview and Welken. During trial, the Taszareks' attorney asked the court to instruct the jury on the theory that Lakeview was the "alter ego" of Welken and that Welken should therefore be personally liable for any judgment. Over the objection of Welken's attorney, the court gave an instruction regarding the alter ego doctrine.

[¶ 6] The jury subsequently returned a verdict in favor of the Taszareks, finding Lakeview was the alter ego of Welken and holding both Lakeview and Welken liable for damages.

## II

[¶ 7] Welken raises two issues on appeal. He argues: 1) the district court erred by giving the jury the alter ego instruction, allowing the jury to pierce the corporate veil to impose personal liability on him for Lakeview's debts; and 2) even if the jury instruction was appropriate, there were insufficient facts presented at trial to pierce Lakeview's corporate veil and hold him personally liable.

[¶ 8] Organizing a corporation to avoid personal liability is a legitimate goal and a primary advantage of doing business in the corporate form. *Hanewald v. Bryan's Inc.*, 429 N.W.2d 414, 415 (N.D.1988). Generally, in a properly formed and appropriately maintained corporation, a shareholder's liability will be limited to the shareholder's investment in the corporation. *Id.* at 416. Further, "[a] corporation's officers and directors generally are not liable for the corporation's ordinary debts." *Watts v. Magic 2 × 52 Mgmt., Inc.*, 2012 ND 99, ¶ 12, 816 N.W.2d 770; *see also Coughlin Constr. Co. v. Nu-Tec Indus., Inc.*, 2008 ND 163, ¶ 19, 755 N.W.2d 867; *Axtmann v. Chillemi*, 2007 ND 179, ¶ 12, 740 N.W.2d 838.

[¶ 9] We have held, however, that "the corporate veil may be pierced when the legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime." *Coughlin Constr.*, 2008 ND 163, ¶ 19, 755 N.W.2d 867. This Court has described specific factors ("*Hilzendager-Jablonsky* factors") for a district court to consider in deciding whether to pierce the corporate veil:

[F]actors considered significant in determining whether or not to disregard the corporate entity include: insufficient capitalization for the purposes of the corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation at the time of the transaction in question, siphoning of funds by the dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and the existence of the corporation as merely a facade for individual dealings.

*Coughlin Constr.*, at ¶ 20 (quoting *Hilzendager v. Skwarok*, 335 N.W.2d 768, 774–75 (N.D.1983)); *see also Jablonsky v. Klemm*, 377 N.W.2d 560, 563–67 (N.D.1985). Additionally, "an element of injustice, inequity

or fundamental unfairness" must be present before a court may properly pierce a corporation's corporate veil. *Coughlin Constr.*, at ¶ 20 (quoting *Jablonsky*, 377 N.W.2d at 564).

[¶ 10] We have also described an "alter ego" approach to piercing the corporate veil:

> To apply the alter ego doctrine, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist, and there must be an inequitable result if the acts in question are treated as those of the corporation alone.

*Red River Wings, Inc. v. Hoot, Inc.*, 2008 ND 117, ¶ 34, 751 N.W.2d 206 (internal quotation marks omitted) (citing *Axtmann*, 2007 ND 179, ¶¶ 12–15, 740 N.W.2d 838; *Jablonsky*, 377 N.W.2d at 563–67; *Hilzendager*, 335 N.W.2d at 774–75). This approach to veil piercing simply recognizes there may be instances when a corporation is in fact a mere instrumentality or alter ego of its owner. *Cf. Solid Comfort, Inc. v. Hatchett Hosp., Inc.*, 2013 ND 152, ¶¶ 14–17, 836 N.W.2d 415; *Mahanna v. Westland Oil Co.*, 107 N.W.2d 353, 361–62 (N.D.1960).

[¶ 11] In deciding whether an alter ego claim has been established, courts examine various factors "which reveal how the corporation operates and the particular defendant's relationship to that operation." *NetJets Aviation, Inc. v. LHC Commc'ns*, 537 F.3d 168, 176–77 (2d Cir.2008) (applying Delaware law). These factors include those similar to our *Hilzendager–Jablonsky* factors. *See, e.g., NetJets Aviation*, 537 F.3d at 177; *Estate of Raleigh v. Mitchell*, 947 A.2d 464, 470–71 (D.C.2008); *Hoyt Props., Inc. v. Prod. Res. Grp.*, 736 N.W.2d 313, 318–19 (Minn.2007); *T & R Trucking, Inc. v. Maynard*, 221 W.Va. 447,

655 S.E.2d 193, 198 (2007); *In re Phillips*, 139 P.3d 639, 644 (Colo.2006); *Hildreth v. Tidewater Equip. Co., Inc.*, 378 Md. 724, 838 A.2d 1204, 1210–11 (2003); *Meridian Minerals Co. v. Nicor Minerals, Inc.*, 228 Mont. 274, 742 P.2d 456, 462–63 (1987); *see also* 1 William Meade Fletcher, *Fletcher Cyc. of the Law of Corp.* §§ 41.10, 41.30 (2015 rev. vol.).

[¶ 12] To the extent our case law may be unclear, we require an examination of the *Hilzendager–Jablonsky* factors as part of the analysis for deciding whether to pierce the corporate veil under the alter ego doctrine. In addition to those factors, an overall element of "injustice, inequity, or fundamental unfairness" must also be established before veil piercing is appropriate. *Jablonsky*, 377 N.W.2d at 564. Moreover, "[c]ourts generally apply the alter ego rule with great caution and reluctance." 1 *Fletcher Cyc. Corp.* § 41.10, at 188.

[¶ 13] "The burden of proving the requirements for piercing the corporate veil is on the party asserting the claim." *Watts*, 2012 ND 99, ¶ 13, 816 N.W.2d 770. We have explained that "[r]esolving the issue is heavily fact-specific and, therefore, is within the sound discretion of the district court." *Id.*

### A

[¶ 14] Welken argues the district court erred by giving the jury an "alter ego" instruction that allowed the jury to pierce Lakeview's corporate veil and impose personal liability on Welken.

[¶ 15] Rule 51(c)(1), N.D.R.Civ.P., provides that "[a] party who objects to a proposed instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection." "[A] party failing to object to the giving or the

failure to give an instruction after having adequate time to take exceptions waives the objection, and the instructions become the law of the case." *Bakke v. D & A Landscaping Co.*, 2012 ND 170, ¶ 14, 820 N.W.2d 357 (citing *Wilson v. Gen. Motors Corp.*, 311 N.W.2d 10, 14 (N.D.1981)); *see also Pegg v. Kohn*, 2015 ND 79, ¶ 6, 861 N.W.2d 764 ("Unraised issues, even if meritorious, become the law of the case."). Under N.D.R.Civ.P. 51(d)(2), when a proper objection has not been made, "[a] court may consider a plain error in the instructions affecting substantial rights that has not been preserved as required by Rule 51(d)(1)."

[¶ 16] At trial, at the conclusion of Lakeview and Welken's case-in-chief, the Taszareks asked the court to instruct on the theory that Lakeview was the alter ego of Welken and that Welken should therefore be personally liable for any judgment. Welken objected to the alter ego instruction, arguing it factually did not apply. Welken's attorney argued, "The fact that there's an individual claim doesn't mean that there's a[n] alter ego argument to be made. And I think this instruction ... doesn't break down exactly what the plaintiffs' burden of proof would be on this issue." Welken's attorney further argued that the combination of the proposed jury instruction and the proposed special verdict form, including the question on alter ego, would cause confusion for the jury.

[¶ 17] The district court concluded evidence supported giving the instruction and provided the following alter ego instruction to the jury:

ALTER EGO

To apply the alter ego doctrine, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist, and there must be an inequitable result if the acts in question are treated as those of the corporation alone.

Additionally, the first question on the special verdict form asked the jury to decide: "Was Lakeview Excavating, Inc. the alter ego of Brian Welken, as defined by the jury instructions?" The jury answered the question in the affirmative, finding Lakeview was the alter ego of Welken.

[¶ 18] On appeal, Welken argues the district court improperly submitted the alter ego question to the jury over his objection and, based on the instruction, the jury pierced the corporate veil and imposed personal liability on him for its verdict. He asserts there are no findings of fact on the *Hilzendager–Jablonsky* factors regarding corporate veil piercing for this Court to review under N.D.R.Civ.P. 52(a). He contends the court erred in allowing the jury to consider whether Lakeview was the alter ego of Welken. He claims this error was not harmless because it affected his right to be insulated from personal liability for Lakeview's debts.

[¶ 19] One noted treatise has discussed a split of authority on the issue of whether to submit the question of piercing the corporate veil to a jury:

Since the doctrine of piercing the corporate veil is an equitable one that is particularly within the province of the trial court, some courts have taken the position that the right to a jury trial on the issue of piercing the corporate veil does not exist. Under this view, when the alter ego issue is raised at a jury trial, any participation by the jury will be merely advisory, and the trial court will be free to disregard the jury's advice and substitute its own findings on factual issues. But if the jury is sitting by consent of the parties, its verdict will have the same effect as if the case had

actually been triable to a jury as of right.

However, there is some conflict over the right to a jury trial on the issue of piercing the corporate veil, and some courts have taken the position that the right to a jury trial on the issue of piercing the corporate veil does exist. It has been reasoned that because piercing the corporate veil is rooted in both law and equity, the right to trial by jury turns on the nature of the relief requested and the presence or absence of factual issues. In fact, where the veil piercing issue turns chiefly on disputed fact questions and the relief sought consists of damages, it has been held to be an issue for the jury.

1 *Fletcher Cyc. Corp.* § 41.29, at 229–30, and cases collected therein.

[¶ 20] While we have said resolving this issue is heavily fact-specific and within the district court's sound discretion, *see, e.g., Watts*, 2012 ND 99, ¶ 13, 816 N.W.2d 770, Welken did not object to the proposed jury instruction on grounds that it would be a misapplication of the law to let the jury resolve the factual question of whether Lakeview was the alter ego of Welken. Rather, he argued the facts presented at trial did not warrant an alter ego instruction. Moreover, Welken did not claim unfair surprise or prejudice and did not request a continuance when the Taszareks requested the instruction seeking to pierce Lakeview's corporate veil.

[¶ 21] Even if Welken is correct that piercing the corporate veil is not a jury question and is solely within the province of the district court, this Court has said that N.D.R.Civ.P. 51, governing objections to jury instructions, did "not change the basic doctrine that error cannot be claimed as to questions on which the trial court was never given meaningful opportunity to rule." *Kirchoffner v. Quam*, 264 N.W.2d

203, 207 (N.D.1978). We conclude Welken has failed to preserve the issue of whether the district court erred in submitting the alter ego question to the jury.

[¶ 22] Although Welken contends the district court's claimed error in submitting this issue to the jury was not harmless error, we have not specifically recognized a "right to have an equitable action tried to the court without a jury." *First Am. Bank W. v. Michalenko*, 501 N.W.2d 330, 331–32 (N.D.1993). Rule 39(c), N.D.R.Civ. P., allows any issue to be tried by either an advisory jury or by a jury with the parties' consent:

> In an action not triable of right by a jury, the court, on motion or on its own:
>
> (1) may try any issue with an advisory jury; or
>
> (2) may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right.

[¶ 23] In *Michalenko*, 501 N.W.2d at 331, Michalenko argued the district court erred in denying her motion to strike the jury, presupposing an absolute right to have an equitable action tried to the court instead of a jury. This Court, however, held the district court did not abuse its discretion in denying her motion because the case had been properly tried to the jury by the parties' consent. *Id.* at 332–33. In so holding, this Court found persuasive cases that had "consistently h[e]ld that a party's failure to object to a demand for jury trial constitutes consent to try the case to the jury under Rule 39(c)." *Id.* at 333.

[¶ 24] We therefore hold that Welken failed to preserve the issue of whether the district court misapplied the law by permitting the jury to resolve the question of whether Lakeview was the alter ego of Welken. We further conclude

that Welken's failure to object to the instruction on this basis constituted consent to allow the jury to consider the issue.

## B

[¶ 25] Although we conclude the district court did not err in allowing the jury to decide whether to pierce Lakeview's corporate veil under the alter ego doctrine, the court must still properly instruct the jury on the law. Our standard for reviewing jury instructions is well established:

> Jury instructions should fairly inform the jury of the law applicable to the case. They should also fairly cover the claims made by both sides of the case. Instructions on issues or matters not warranted by the evidence are erroneous, but constitute reversible error only when calculated to mislead the jury or, in other words, when they are prejudicial.
>
> . . . .
>
> When a trial court has chosen a specific instruction, a reviewing court should not be quick to second-guess its choice, if there is evidence or inferences from the evidence to support it. . . . Only scant evidence may be needed to support a jury instruction. Where there is no evidence to support a particular theory, there should be no instruction on it; but if the evidence admits of more than one inference, an instruction is proper.

*Tidd v. Kroshus*, 2015 ND 248, ¶ 7, 870 N.W.2d 181 (quoting *Cartier v. Northwestern Elec., Inc.*, 2010 ND 14, ¶ 11, 777 N.W.2d 866). "On appeal, we review jury instructions as a whole, and if they correctly advise the jury of the law, they are sufficient although parts of them, standing alone, may be erroneous and insufficient." *Tidd*, at ¶ 7 (quoting *M.M. v. Fargo Pub. Sch. Dist. No. 1*, 2010 ND 102, ¶ 24, 783 N.W.2d 806). "If the district court commits error in its instructions, this Court decides whether the error was harmless." *Tidd*, at ¶ 7.

[¶ 26] As discussed, the alter ego approach to veil piercing under North Dakota law requires an examination of the *Hilzendager–Jablonsky* factors to establish how a corporate entity operates and the specific defendant's relationship to the entity's operation. The district court's instruction on alter ego in this case did not include any reference to the factors. The alter ego instruction is therefore plainly insufficient in failing to require the jury to conduct an appropriate analysis of those factors. We therefore conclude the district court erred in instructing the jury on the alter ego doctrine when the court's instructions permitted the jury to pierce Lakeview's corporate veil without any consideration of the *Hilzendager–Jablonsky* factors.

[¶ 27] Rule 61, N.D.R.Civ.P., addressing harmless error, states:

> Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Because the alter ego instruction in this case was insufficient, and thus erroneous, and because the error affected the substantial rights of Welken, we cannot say the error in the instructions in this case was harmless. We therefore reverse and remand for a new trial.

## C

[¶ 28] Because we are reversing and remanding for a new trial, we need not

address Welken's remaining issue that insufficient facts supported piercing Lakeview's corporate veil and holding Welken personally liable.

### III

[¶ 29] The district court judgment is reversed, and the case is remanded for proceedings consistent with this opinion.

[¶ 30] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DALE V. SANDSTROM and DANIEL J. CROTHERS, JJ., concur.

CROTHERS, Justice, specially concurring.

[¶ 31] I have signed the majority opinion and write separately to continue emphasizing the limited remedy veil piercing should be.

[¶ 32] Corporate shareholders generally risk only their investment in the corporation. In *Axtmann v. Chillemi*, I wrote:

"Black letter law provides that corporations are independent, legal entities that generally insulate their owners from personal liability. *See Mann v. Mann*, 57 N.D. 550, 223 N.W. 186, 189 (1929) (citation omitted). The key precept in a properly formed and ordinarily maintained corporation is that a shareholder's liability is limited to the investment in the enterprise. *Hanewald v. Bryan's Inc.*, 429 N.W.2d 414, 416 (N.D.1988) (citing 1 F. O'Neal and R. Thompson, *O'Neal's Close Corporations* § 1.09 (3rd ed.1987))."

2007 ND 179, ¶ 28, 740 N.W.2d 838 (Crothers, J., concurring in part and dissenting in part).

[¶ 33] Nor are officers and directors of a corporation generally liable for the debts of the corporation. *See Coughlin Constr. Co. v. Nu–Tec Industries, Inc.*, 2008 ND 163, ¶ 19, 755 N.W.2d 867 (citing *Axtmann v. Chillemi*, 2007 ND 179, ¶ 12, 740 N.W.2d 838). "Organizing a corporation to avoid personal liability is a legitimate goal and is one of the primary advantages of doing business in the corporate form." *Chillemi*, at ¶ 12.

[¶ 34] "The burden of establishing the necessary elements for piercing the corporate veil rests on the party asserting the claim." *Intercept Corp. v. Calima Fin., LLC*, 2007 ND 180, ¶ 15, 741 N.W.2d 209 (citations omitted). The burden for piercing a corporation's veil includes producing evidence on the following factors:

- Insufficient capitalization for the purposes of the corporate undertaking;
- Failure to observe corporate formalities;
- Nonpayment of dividends;
- Insolvency of the debtor corporation at the time of the transaction in question;
- Siphoning of funds by the dominant shareholder;
- Nonfunctioning of other officers and directors;
- Absence of corporate records; and
- The existence of the corporation as merely a facade for individual dealings.

[¶ 35] Here, Taszareks only showed Welken was the president and sole shareholder of Lakeview Excavating—a circumstance expressly permitted by law. *See* N.D.C.C. § 10–19.1–09 (one or more persons may act as incorporators); § 10–19.1–55 (same individual may hold multiple corporate offices). The evidence showed Lakeview Excavating was a Subchapter S corporation allowing tax treatment as if it was a partnership. That fact is unremarkable and, for a small business operation, often wise. *See Axtmann v. Chillemi*, 2007 ND 179, ¶ 39, 740 N.W.2d 838. As I noted in another matter, "'it is rare for small closely-held corporations to pay divi-

dends because such payments would in effect be double-taxed.... The fact that [the corporation] did not pay dividends shows only that its officers were smart, not that [the corporation] was a facade.'" *Id.* at ¶ 39 n. 4 (Crothers, J., concurring in part and dissenting in part) (quoting *Trustees of Graphic Commc'ns Int'l Union v. Bjorkedal,* No. 04–3371, 2006 WL 3511767, at *14 (D.Minn. Dec. 6, 2006)).

[¶ 36] The Taszareks presented no evidence about whether, at the time of the complained of actions, the corporation was adequately capitalized for a company engaged in the excavating business. They presented no evidence that corporate formalities were not observed, that no corporate records were made or maintained or that officers and directors were not in place and functioning. Taszareks also failed to show the corporation was insolvent at the time of the wrongful conduct. Normally, the lack of evidence would doom a claim. However, the plaintiff's tardy introduction of the issue, the defense's incomplete objection and the court's inadequate jury instruction all combine to warrant remand.

[¶ 37] On remand, I hope the court and the parties will pay heed to what I have been writing about with the hope of preventing—contorting the corporate veil piercing process from a "rare exception" in cases of fraud or other exceptional circumstance to a general rule of finding individual liability when a corporate debtor is impecunious. *See Axtmann v. Chillemi,* 2007 ND 179, ¶ 29, 740 N.W.2d 838 (Crothers, J., concurring in part and dissenting in part) (quoting 18 Am. Jur. 2d Corporations § 47 (2004) (footnotes omitted)); *Solid Comfort, Inc. v. Hatchett Hospitality, Inc.,* 2013 ND 152, ¶ 35, 836 N.W.2d 415 ("I already have written about why I believe North Dakota courts are too easily piercing corporate veils and too easily finding

alter egos."); *Intercept Corp. v. Calima Fin., LLC,* 2007 ND 180, ¶ 22, 741 N.W.2d 209 (Crothers, J., specially concurring) ("I specially concur in the latter holding to emphasize that the Court's discussion at ¶ 15 of this case should not be read to make disregarding an entity's separate legal existence the rule, rather than the exception.").

[¶ 38] DANIEL J. CROTHERS