FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
JANUARY 5, 2023
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2023 ND 4

UMB Bank, N.A., as successor trustee under
the Indenture of Trust dated October 1, 2013,
for the benefit of the holders of Multifamily
Housing Revenue Bonds (Eagle Crest
Apartments, LLC Project), Series 2013,                    Plaintiff and Appellee

v.

Eagle Crest Apartments, LLC; Bakken Housing
Company, LLC; John T. Sessions; Historic Flight
Foundation; Historic Hangars, LLC; FWF, Ltd;
Orkney Air, LLC,                                        Defendants and Appellants

   and

Any person(s) in possession; and all persons
unknown, claiming any estate or interest in,
or lien or encumbrance upon, the real
estate described in the Complaint,                                    Defendants

### No. 20220108

Appeal from the District Court of Williams County, Northwest Judicial
District, the Honorable Paul W. Jacobson, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Karla M. Vehrs (argued) and Conor H.M. Smith (appeared), and George H. Singer (on brief), and William P. Wassweiler (on brief), Minneapolis, MN, for plaintiff and appellee.

Caryn A. Boisen (argued) and Madeline E. Davis (appeared), St. Paul, MN, and Caren L.W. Stanley (appeared) and Jon R. Brakke (on brief), Fargo, ND, for defendants and appellants.

**McEvers, Justice.**

[¶1]   Eagle Crest Apartments, LLC, et al. (together "the Defendants"), appeal from a judgment awarding UMB Bank N.A. more than $21 million in an action for breach of contract, foreclosure, fraudulent transfers, and deceit. The Defendants raise a multitude of issues on appeal. Our review is limited to the issues they raised in their motion for a new trial. We conclude the district court did not err when it entered a deficiency judgment and pierced the Defendants' corporate veils. We affirm the judgment.

I

[¶2]   UMB is the successor trustee for owners of bonds issued by the City of Williston. Williston issued the bonds to raise funds for a loan to Eagle Crest Apartments to finance the construction of an apartment complex. Bakken Housing Company is a member of Eagle Crest Apartments. UMB sued Eagle Crest Apartments and Bakken Housing Company for breach of contract and foreclosure. The district court granted UMB partial summary judgment on its foreclosure claim, and the apartment complex was sold to UMB at a sheriff's sale for $25 million. UMB amended its complaint multiple times to add claims for fraudulent transfers, deceit, and exemplary damages against Bakken Housing Company; John Sessions; Historic Flight Foundation; Historic Hangars, LLC; FWF, Ltd.; and Orkney Air, LLC. The entities UMB added are organized in either Washington or Delaware and are engaged in some aspect of aviation. Sessions is either a full or part owner of each.

[¶3]   UMB sought to pierce the entities' corporate veils alleging they were the alter egos of Sessions and each other. UMB alleged Sessions used them as "a facade for his own individual dealings," their accounts "were treated as one continuous flow of funds," and through fraud Sessions "empt[ied] the coffers of Eagle Crest to put fuel in his planes, prop up his failing businesses, and visit luxury hotels, to the detriment of investors, bondholders, and the City of Williston." The Defendants moved for partial summary judgment asserting

1

North Dakota law does not support the type of corporate veil piercing UMB sought. The court denied their motion holding UMB presented a "valid legal theory" as to the corporate veil piercing claim, but the court declined to decide whether to pierce the veils before trial.

[¶4]   At trial, before empaneling a jury, the district court heard evidence from a UMB representative regarding the amount of debt remaining on the apartment complex. The court then entered a deficiency judgment against Eagle Crest Apartments for roughly $20 million. The court empaneled a jury and provided instructions on piercing the corporate veil and the alter ego doctrine. The jury returned a special verdict finding all of the Defendants were the alter egos of both each other and Sessions. The jury found the Defendants, with the exception of Orkney Air and Historic Hangars, committed fraudulent transfers and conspired to commit deceit. The jury awarded UMB compensatory and exemplary damages.

[¶5]   The district court entered judgment in favor of UMB against all of the Defendants, jointly and severally, piercing the entities' corporate veils, for $20,129,475.97. The court also entered judgment against Sessions for $902,184.75 and against Historic Flight Foundation for $300,728.25. The Defendants filed a motion for a new trial arguing the court's application of corporate veil piercing was in "nonconformance to North Dakota law" as an "arbitrary enforcement of an unrecognized doctrine," and that they were unfairly surprised when the court spread liability for the deficiency judgment among the Defendants "despite the jury never hearing any argument whatsoever as to the deficiency judgment claim." They also filed a motion to stay the judgment and a notice of appeal. We temporarily remanded the case for disposition of the post-trial motions. The district court denied the motions and entered an amended judgment, which the Defendants now appeal.

II

[¶6]   On appeal, in addition to the arguments the Defendants asserted in their motion for a new trial, they raise a multitude of issues concerning sufficiency of service, the amended complaints, discovery, the sheriff's sale, and a pre-judgment attachment order. These issues are beyond the scope of our review.

2

When a party files a motion for a new trial, our review is limited to the issues raised in the party's motion:

> It is well settled that where a motion for a new trial is made in the lower court the party making such a motion is limited on appeal to a review of the grounds presented to the trial court. This restriction of appealable issues applies not only to review of a denial of the motion for a new trial, but also to the review of the appeal from the judgment itself. . . . This rule forecloses appellate review of alleged errors . . . which were not raised on the motion for a new trial.

*Lessard v. Johnson*, 2019 ND 301, ¶ 22, 936 N.W.2d 528 (quoting *Prairie Supply, Inc. v. Apple Elec., Inc.*, 2015 ND 190, ¶ 7, 867 N.W.2d 335); *see also Marler v. Martin*, 2018 ND 238, ¶ 1, 919 N.W.2d 191; *Andrews v. O'Hearn*, 387 N.W.2d 716, 728-29 (N.D. 1986); *Zimbelman v. Lah*, 237 N.W. 207, 208 (N.D. 1931). This long-standing rule is derived from territorial law. *Prairie Supply*, at ¶ 7. We therefore limit our review to the issues the Defendants raised in their motion for a new trial.

## III

[¶7]   The Defendants moved for a new trial under N.D.R.Civ.P. 59 arguing the district court erred when it employed corporate veil piercing to spread liability for the deficiency judgment among the Defendants without the jury considering the issue. Their motion was specifically brought under N.D.R.Civ.P. 59(b)(1), (3), and (7), which allow the district court to grant a new trial on grounds "materially affecting the substantial rights" of the movant, including:

> (1) irregularity in the proceedings of the court, jury, or adverse party, or any court order or abuse of discretion that prevented a party from having a fair trial;
>
> . . .
>
> (3) accident or surprise that ordinary prudence could not have guarded against;

3

. . .

> (7) errors in law occurring at trial and, when required, objected to by the moving party . . . .

Our review of a decision on a motion for a new trial "is limited to deciding whether the court manifestly abused its discretion." *Lessard*, 2019 ND 301, ¶ 7. "A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Id.*

### A

[¶8]  We first address the Defendants' arguments concerning corporate veil piercing. They claim the district court's application of veil piercing impermissibly resulted in separate entities bearing responsibility for each other's liability.

[¶9]  "Although a member or owner of a limited liability company generally is not liable for the company's debts, a member or owner will be personally responsible if the conditions and circumstances under which the corporate veil of a corporation may be pierced are present." *Monster Heavy Haulers, LLC v. Goliath Energy Servs., LLC*, 2016 ND 176, ¶ 22, 883 N.W.2d 917. A company's corporate veil may be pierced, and the owners held personally responsible, when the company "is used to defeat public convenience, justify wrong, protect fraud, or defend crime." *Taszarek v. Lakeview Excavating, Inc.*, 2016 ND 172, ¶ 9, 883 N.W.2d 880 (quoting *Coughlin Constr. Co. v. Nu-Tec Indus., Inc.,* 2008 ND 163, ¶ 19, 755 N.W.2d 867). An element of injustice, inequity, or fundamental unfairness must be present, and the *Hilzendager-Jablonsky* factors, which include the following, must be considered:

> insufficient capitalization for the purposes of the corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation at the time of the transaction in question, siphoning of funds by the dominant shareholder, nonfunctioning of other officers and directors,

4

> absence of corporate records, and the existence of the corporation as merely a facade for individual dealings.

*West Dakota Oil, Inc. v. Kathrein Trucking, LLC*, 2022 ND 111, ¶ 7, 974 N.W.2d 630 (quoting *Coughlin Constr.*, at ¶ 20); *see also Jablonsky v. Klemm*, 377 N.W.2d 560, 564 (N.D. 1985)*; Hilzendager v. Skwarok*, 335 N.W.2d 768, 774, (N.D. 1983).

[¶10] Under the "alter ego approach," piercing the veil may be justified if the company is merely an alter ego of its equitable owner—i.e., there is "such a unity of interest and ownership" that a separate existence does not "in reality exist." *Taszarek*, 2016 ND 172, ¶ 10 (quoting *Red River Wings, Inc. v. Hoot, Inc.*, 2008 ND 117, ¶ 34, 751 N.W.2d 206). In other words, the company is a "mere instrumentality or alter ego of its owner." *Taszarek*, at ¶ 10. Courts should apply the alter ego doctrine with caution. *Taszarek v. Lakeview Excavating, Inc.*, 2019 ND 168, ¶ 7, 930 N.W.2d 98. Veil piercing under the alter ego approach still requires an element of injustice, inequity, or fundamental unfairness and consideration of the *Hilzendager-Jablonsky* factors. *Taszarek*, 2016 ND 172, ¶ 12.

[¶11] Whether to pierce the veil is a "heavily fact-specific" inquiry. *West Dakota Oil*, 2022 ND 111, ¶ 9. "The burden of proving the factors necessary to pierce the veil rests on the party asserting the claim." *Id*. Findings of fact concerning whether to pierce the veil are presumed correct, and we will not set them aside on appeal unless they are clearly erroneous. *Id*. at ¶ 6. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, a reviewing court is left with a definite and firm conviction a mistake has been made." *Id*

[¶12] The Defendants label the district court's application of veil piercing in this case as "horizontal veil piercing" because it resulted in liability being spread across separate entities. They argue this was impermissible because the companies engage in wholly unrelated business and are not sufficiently related. They assert "horizontal veil piercing" may only be "utilized between a parent company and its subsidiary." They also claim the evidence was

insufficient to establish an element of injustice, inequity, or fundamental unfairness.

[¶13] Various names have been used to describe theories that allow companies sharing common ownership to be responsible for each other's liability under veil piercing principles, including "single-entity liability," "enterprise liability," and "horizontal liability." *See generally Mortimer v. McCool*, 255 A.3d 261, 266, 280-83 (Pa. 2021). Some jurisdictions conceptualize the idea as "triangular piercing." *Id.* at 285. Liability flows up from the debtor entity to the common owner under traditional veil piercing principles and then, under "reverse piercing" principles, the common owner's liability flows down and is shared horizontally across the separate entities—creating the shape of a triangle. *Id.* at 285; *see also Nursing Home Consultants, Inc. v. Quantum Health Servs., Inc.*, 926 F. Supp. 835, 840 n.12 (E.D. Ark. 1996).

[¶14] Setting aside the specific labels and mechanical explanations other jurisdictions have employed, we conclude the district court's application of veil piercing in this case is permissible under our alter ego approach and is supported by *Mahanna v. Westland Oil Co.*, 107 N.W.2d 353 (N.D. 1960). In *Mahanna*, two corporations shared a common owner who treated the corporations in a manner that made it difficult to distinguish between them, including keeping their equipment in the same location, using the same name, and sharing a single checking account. *Id.* at 361. This Court held the corporations "were so intermingled and confused" that disregarding their separate identities was justified, explaining:

> Most of the cases in which the facts have been found sufficient to disregard corporate entities deal with parent and subsidiary corporations. They deal with situations where one corporation owns a controlling interest in the stock of another and through its officers so manages the subsidiary that it becomes a mere instrumentality or adjunct of the parent. While in this case we do not have the parent and subsidiary relationship, we do have two corporations, under the control of a single individual, managed in such a manner that they became instrumentalities, adjuncts and agents of each other and in their relations with their customers identical or indistinguishable in fact. The reasons for

6

> disregarding the corporate entities in such a case are the same as exist in the cases where a subsidiary becomes indistinguishable from the parent corporation.

*Id.* at 361-62 (citations omitted). Under *Mahanna*, entities sharing common ownership may be held responsible for each other's liability under our veil piercing jurisprudence. Although *Mahanna* did not speak in terms of the alter ego doctrine that we developed in subsequent cases, the basis for *Mahanna's* holding—that the companies were "instrumentalities, adjuncts and agents of each other"—is consistent with the alter ego approach.

[¶15] In this case, the parties submitted jointly proposed jury instructions on the requirements for corporate veil piercing and the alter ego doctrine. The district court adopted the instructions, which specifically required the jury to consider the *Hilzendager-Jablonsky* factors and required an inequitable result for an alter ego finding. The jury heard testimony and viewed evidence that indicated Sessions disregarded the entities' corporate form and used them for personal purposes. The jury found each Defendant was the alter ego of both Sessions and the other Defendants. The jury also found Sessions and various entities fraudulently transferred roughly $2.9 million to the detriment of investors and engaged in a conspiracy to commit deceit. Based on our review of the record, we are not convinced the jury's findings are clearly erroneous. We hold the facts in this case support the district court's application of veil piercing.

B

[¶16] The Defendants argue the district court erred when it held them all jointly and severally liable for the amount of the deficiency judgment "despite the jury never considering or deciding the issue." They assert the jury's alter ego findings were "limited to the issues on the special verdict form (fraudulent transfer, deceit, and civil conspiracy) and had no impact on the deficiency judgment." They claim they were unfairly surprised and unable to defend themselves because "other than Eagle Crest, none of them was aware that such a judgment was being sought against them."

7

[¶17] As to the Defendants' claim of unfair surprise, UMB's final amended complaint plainly stated it "seeks the entire amount of the deficiency judgment from all Defendants" under its alter ego veil piercing counts. The Defendants were therefore on notice of UMB's claim. As to the Defendants' assertion they were unable to defend themselves, the issues concerning veil piercing were fully litigated at trial. To the extent the Defendants assert the district court improperly took the deficiency judgment issue away from the jury, we note jury findings are not required for entry of a deficiency judgment on commercial property. *See* N.D.C.C. § 32-19-06.1 (describing findings of fact made by the district court). The Defendants have not offered a persuasive explanation for why they, as the alter egos of Eagle Crest Apartments, should not also be responsible for the amount of the deficiency judgment. We conclude the Defendants were not unfairly surprised or unable to defend themselves. We hold the district court did not abuse its discretion when it denied the Defendants' motion for a new trial.

IV

[¶18] We affirm the judgment.

[¶19] Jon J. Jensen, C.J.
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte
        Gail Hagerty, S.J.

[¶20] The Honorable Gail Hagerty, S.J., sitting in place of VandeWalle, J., disqualified.